**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 93-DP-00059-SCT**

*EARL WESLEY BERRY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/25/1992 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | CHICKASAW COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID O. BELL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | LAWRENCE LITTLE |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - DIRECT APPEAL |
| DISPOSITION: | AFFIRMED - 10/11/2001 |
| MOTION FOR REHEARING FILED: | 10/24/2001; denied 12/13/2001 |
| MANDATE ISSUED: | 12/20/2001 |

**EN BANC.**

**PITTMAN, CHIEF JUSTICE, FOR THE COURT:**

¶1. This case is before the Court on an appeal prosecuted from the Circuit Court of Chickasaw County, Mississippi, where relief was denied after a January 16, 1998, hearing on the issue of jury selection under ***Batson v. Kentucky***, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The circuit court filed a written finding of fact on January 28, 1998. The hearing was held pursuant to a remand order after this Court affirmed Berry's sentence of death on all grounds except for the ***Batson*** question. *See **Berry v. State***, 703 So.2d 269 (Miss. 1997).

## FACTS

¶2. Earl Wesley Berry was convicted of capital murder in the Chickasaw County Circuit Court and sentenced to death for the kidnapping and murder of Mary Bounds in violation of Miss. Code Ann. § 97-3-19(2)(e). Berry was also charged with being an habitual offender in violation of Miss. Code Ann. § 99-19-81. On appeal, this Court affirmed the jury's verdict of guilty but vacated the death sentence and remanded for a new sentencing trial. ***Berry v. State***, 575 So.2d 1 (Miss. 1990), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2042, 114 L.Ed.2d 126 (1991) (***Berry I***). Following the resentencing trial, the jury again returned a sentence of death.

¶3. The State used all twelve of its peremptory strikes in this case. Seven white prospective jurors and five African American prospective jurors were stricken, resulting in a jury composed of eleven white jurors and one African American juror.

¶4. During the original trial, the trial court found that Berry had not established a prima facie case of

purposeful discrimination, and that *Batson* did not apply because Berry was a white defendant. Both parties and the trial court failed to recognize that under *Powers*, white defendants also have standing to challenge discriminatory peremptory strikes.

¶5. On appeal to this Court, Berry argued, inter alia, that the trial court erred in allowing the State to peremptorily strike black jurors in violation of *Batson* and *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). This Court affirmed Berry's sentence of death on all grounds except for the *Batson* question, and remanded to the trial court for a hearing on whether the *Batson* criteria were violated by the prosecution in exercising its peremptory challenges.

¶6. The hearing on remand was held before Circuit Judge Kenneth Coleman on January 16, 1998. The district attorney was given an opportunity to come forward with neutral, non-race based *Batson*-conforming explanations for each of the peremptory challenges he used on all the African Americans excused. Berry in turn was afforded the opportunity to challenge and rebut any such explanations.

¶7. On January 28, 1998, the circuit court entered its order finding that Berry failed to establish a prima facie case of purposeful discrimination and that the strikes made by the State were race neutral. After careful review, this Court concludes that the trial court properly denied Berry's *Batson* motion.

¶8. On appeal, Berry raises the following issues:

> **I. THE TRIAL COURT ERRED IN FINDING THAT THE STATE HAD PROFFERED RACIALLY NEUTRAL EXPLANATIONS FOR EXERCISING PEREMPTORY CHALLENGES AGAINST POTENTIAL JURORS.**
>
> **II. THE TRIAL COURT FAILED TO MAKE A FACTUAL ANALYSIS OF THE REASONS GIVEN BY EITHER SIDE.**

## STANDARD OF REVIEW

¶9. On appellate review, a trial court's determinations under *Batson* are accorded great deference because they are largely based on credibility. *McGilberry v. State*, 741 So.2d 894, 923 (Miss. 1999) (citing *Coleman v. State*, 697 So.2d 777, 785 (Miss. 1997)). This Court will reverse only when such decisions are clearly erroneous. *Woodward v. State*, 726 So.2d 524, 530 (Miss. 1998); *Lockett v. State*, 517 So.2d 1346, 1349-50 (Miss. 1987).

## DISCUSSION

¶10. Berry alleges that the State's use of five of its peremptory challenges against African American jurors constitutes a violation of *Batson v. Kentucky*. Berry contends that the trial court erred in finding that the State had offered racially neutral reasons for exercising its peremptory strikes.

¶11. A *Batson* challenge to a peremptory strike should proceed as follows. First, the defendant must establish a prima facie case of discrimination in the selection of jury members. *Berry v. State*, 703 So.2d at 294 (citing *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). The prosecution then has the burden of stating a racially neutral reason for the challenged strike. If the State gives a racially neutral explanation, the defendant can rebut the explanation. Finally, the trial court must make a factual finding to determine if the prosecution engaged in purposeful discrimination. If the defendant fails to rebut,

the trial judge must base his decision on the reasons given by the State. ***Thorson v. State***, 721 So.2d 590, 593 (Miss. 1998).

¶12. Ordinarily, the first step in a ***Batson*** analysis would be to determine whether there was a prima facie showing that race was the motivation for the State's peremptory challenges. In the case at bar, however, the State gave race neutral reasons for its peremptory strikes during the resentencing trial. The United States Supreme Court has explained that once reasons are offered by the proponent, the issue of whether a prima facie case of discrimination has been developed is moot. ***Hughes v. State***, 735 So.2d 238, 250 (Miss. 1999) (citing ***Hernandez v. New York***, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)).

¶13. Therefore, the focal point of step two in the ***Batson*** analysis is whether the State met its burden of offering race-neutral reasons for its peremptory challenges of black members of the venire. The primary question is "whether the opponent of the strike has met the burden of showing that proponent has engaged in a pattern of strikes based on race or gender, or in other words, 'the totality of the relevant facts gives rise to an inference of discriminatory purpose.'" ***Randall v. State***, 716 So.2d 584, 587 (Miss. 1998) (quoting ***Batson***, 476 U.S. at 94). The establishment of a race neutral reason is not a difficult task. ***Stewart v. State***, 662 So.2d 552, 558 (Miss. 1995). For ***Batson*** step II purposes, any reason which does not facially violate the Constitution is sufficient. ***Randall v. State***, 716 So.2d 584, 558 (Miss. 1998) (citing ***Purkett v. Elem***, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)). In ***Randall***, we held:

> The second step of this process does not demand an explanation that is persuasive, or even plausible. 'At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' ***Purkett***, 514 U.S. at 768.

***Randall***, 716 So.2d at 588.

¶14. At the final stage of the ***Batson*** analysis, the trial court determines if the reasons given by the prosecution were pretexts for intentional discrimination. ***Thorson***, 721 So.2d at 593. The burden remains with the opponent of the strike. ***Purkett***, 514 U.S. at 768, 115 S.Ct. at 1771. This Court affords great deference to the trial court's findings of whether a peremptory challenge was race neutral. ***Simon v. State***, 679 So.2d 617, 621 (Miss. 1996). Such deference is necessary because finding that a striking party engaged in discrimination is largely a factual finding. ***Thorson,*** 721 So.2d at 593 (citing ***Hernandez v. New York***, 500 U.S. at 367-68)).

¶15. This Court has identified five indicia of pretext when analyzing proffered race-neutral reasons for peremptory strikes under ***Batson***:

> 1) disparate treatment, that is, the presence of unchallenged jurors of the opposite race who share the characteristic given as the basis for the challenge;
>
> 2) the failure to voir dire as to the characteristic cited;
>
> 3) the characteristic cited is unrelated to the facts of the case;
>
> 4) lack of record support for the stated reason; and
>
> 5) group based traits.

*Manning v. State*, 765 So.2d 516, 518 (Miss. 2000); *Mack v. State*, 650 So.2d 1289, 1298 (Miss. 1994) (citing *Whitsey v. State*, 796 S.W.2d 707, 707 (Tex. Crim. App. 1989)). For each juror listed below, Berry has raised arguments regarding these five indicia of pretext.

## I.

¶16. We now examine the explanations given by the State at both the resentencing hearing and at the *Batson* hearing for each challenged strike.[1] The jurors in question are:

JUROR NO. 22, SARA MOSLEY:

¶17. In the resentencing trial, the State gave the following reason for striking Juror Mosley:

MR. LITTLE [for the State]: She did state that she had heard something on T.V. She said she could set that aside, but there weren't too many jurors that said they had heard anything on T.V. about this. Some of them said they saw something in the newspaper; and in response to number 22, I could not understand why her juror information ard [sic] says, "Have you ever heard of Earl Berry?" Says, "Yes." "Please describe what you konw [sic] of him." Nothing. Then it's "n-a-b-o-r."

BY MR. LITTLE: And she is also somewhat close in age to the defendant. I forget how old the defendant is. This is a 32-year-old black female, had lived in Racine Wisconsin, also, it says in response to number 4 on the juror information card; and, of course, this being Albany, Mississippi, in my experience everyone nearly we've had to extradict [sic] from New Albany goes to Racine, Wisconsin or Iowa. When I see Racine, Wisconsin, I always am concerned about that; that they may have had problems with the law.

¶18. During the remand hearing presently before this Court on appeal, the State restated the reason given at the resentencing trial as follows:

BY MR. LITTLE: ...at that time of the trial when I was attempting to justify some reasons for this process I stated that juror number 22 stated that she heard something on TV. She said she could set that aside but there weren't many jurors that said they had heard anything on TV about this and some of them say they saw something in the news paper. Then she had a response on that I could not understand on her juror information card which says that she had heard of Earl Berry and it said describe what you know of him and it said nothing and then it said the word N A B O R. So based on the notes that I had on juror number 22 and based on what was previously stated in the record that as the Court recalls we had transferred this case from Chickasaw County to Union County and when we retried the death penalty of this case which is subject of this hearing. Four or five years past and when we voir dired the jury in Union County they didn't remember a lot about this case and as the court recalls only a few of them said they had read or heard or seen anything about it on TV and this lady was one that said she had heard something about it and apparently on her juror information card there was confusing information about whether she knew this man. Then I chose or the State chose to exercise the peremptory challenge against her.

¶19. This Court held in *Perry v. State*, 637 So.2d 871, 874 (Miss. 1994), that being a neighbor to the defendant was an appropriate race-neutral reason for peremptorily striking a juror. Further, in *Lockett v. State*, 517 So.2d 1346 (Miss. 1987), this Court provided an Appendix of racially neutral reasons upheld

by other courts "in an effort to provide some guidance to our trial courts." *Id.* at 1353. Listed under the first cited case, *Taitano v. State*, 4 Va. App. 342, 358 S.E.2d 590 (1987), is the explanation "lived near the defendant." The prosecution in the case at bar noted that Juror Mosley had written the word "N A B O R" on her juror information card, thus indicating a possibility that she might live near the defendant.

¶20. Berry argues that the reasons given by the State were applied inconsistently to white venire members in this case because Richard Hood was also thirty-two years of age and Elaine Tennyson stated that she had heard about the case on television. Disparate treatment is strong evidence of discriminatory intent. *Manning v. State*, 765 So.2d 516, 520-21 (Miss. 2000) (citing *Freeman v. State*, 651 So.2d 576, 587 (Ala.Crim.App.1994); *People v. Hall*, 35 Cal.3d 161, 197 Cal.Rptr. 71, 672 P.2d 854, 858 (1983); *Whitsey v. State*, 796 S.W.2d 707, 714 (Tex.Crim.App.1989)). However, disparate treatment is only one factor to be considered by the trial court; it is not necessarily dispositive of discriminatory treatment. *Id.* (citing *State v. Floyd*, 343 N.C. 101, 468 S.E.2d 46, 48-49 (1996)). Where the State is able to articulate additional race-neutral reasons for striking the juror in question and uses peremptory strikes against jurors of another race based upon the same articulated reason, we have held that the theory of disparate treatment must fail. *Manning v. State*, 735 So.2d 323, 340 (Miss. 1999); *Woodward v. State*, 726 So.2d 524, 531 (Miss.1997).

¶21. In the instant case, there were multiple reasons given for striking Juror Mosley, including the fact that she was thirty-two years old, she was possibly a neighbor to the defendant, and she stated that she had heard something about the case on television. Where multiple reasons lead to a peremptory strike, the fact that other jurors may have some of the individual characteristics of the challenged juror does not demonstrate that the reasons assigned are pretextual. *Manning v. State*, 726 So.2d 1152, 1186 (Miss. 1998), *overruled on other grounds*, *Weatherspoon v. State*, 732 So.2d 158 (Miss. 1999)(citing *Moore v. Keller Indus., Inc.*, 948 F.2d 199, 202 (5th Cir.1991)). *See also* *Lockett v. State*, 517 So.2d at 1352. Accordingly, the trial court's ruling accepting the State's articulated race-neutral reason for striking Juror Mosley was neither clearly erroneous nor against the overwhelming weight of the evidence.

JUROR NO. 32, BILLIE WAYNE STOKES:

¶22. In the original resentencing appeal, Berry made no claim regarding the State's peremptory strike against Juror Stokes. At the resentencing hearing, the State offered the following reason for striking this juror:

> BY MR. LITTLE: Thirty-two said on his juror information card in the response to number 19 that he received a DUI. Then it says that he has a sister and a first cousin in jail. On number 8 it says, "list the job you's have had in the previous 10 years." He listed 11 different jobs in the last 10 years; and we do not feel that represents a very good work record. He's 27 years of age, and his response to number 5, "Do you own or rent?" "Stay with parents" is his answer to that. We didn't feel he would be a good juror.

¶23. At the *Batson* hearing ordered by this Court, Larry Little, the former district attorney, gave as reasons for striking this juror that he was from Racine, Wisconsin and was thirty-two years old. Little seems to have been confused, as it is clear from an examination of the record that these reasons were related to Juror Mosley. Despite this confusion, Little did continue with the proper reasons from the original resentencing hearing in stating the reasons for striking Juror Stokes. Those reasons were:

BY MR. LITTLE: I had two other reasons in my notes and in the record on page 342 that I wanted to reiterate. 32 said on this juror information card that he had received a DUI and he had a sister and first cousin in jail is the way I understood the juror information card. It also on the juror information sheet asked about previous employment and Mr. Stokes apparently listed 11 different jobs in the last 10 years and that is further reasons on juror number 32. The other thing I mentioned on the record, the juror information card said, do you own or rent and it said stayed with parent and staying with his parent would not be a perfect juror. So I used all these reasons for challenging him.

¶24. This Court has upheld peremptory strikes based on the conviction of the prospective juror for DUI, the conviction of the juror's family members, and the employment history or lack thereof. *Manning v. State*, 735 So.2d at 340; *Woodward v. State*, 726 So.2d at 530; *Foster v. State*, 639 So.2d 1263, 1279-80 (Miss.1994); *See also Griffin v. State*, 607 So.2d 1197, 1202 (Miss.1992) (the striking of a potential juror on the basis that the juror had been convicted and sentenced to jail for DUI and had other problems with the police upheld as race-neutral); *Lockett v. State*, 517 So.2d at1356 (Appendix I) (criminal record is a race-neutral reason).

¶25. Accordingly, we find the trial court did not err in ruling that the reasons stated on the record for the strike of Juror Stokes were racially neutral.

JUROR NO. 42, ALBERT LEE BELL:

¶26. The strike of this juror was not raised in the original direct appeal of the resentencing trial. Juror Bell had been challenged for cause, however, that challenge was denied by the trial court. During the resentencing trial, the State offered the following reasons for striking Juror Bell:

BY MR. LITTLE: I challenged Mr. Bell for cause, and that challenge was denied. He did respond a lot on voir dire, wanted to know if life meant life without parole. He asked a lot of questions on voir dire and was very responsive to different things on voir dire, but our position on that was that he was from his answers he appeared to be leaning toward the thought that life without parole would be what he should do.

When you take that in combination with what juror Sanders, number 96, continued to say about the fact that he's just, he called it a killing. He never agreed to kill someone who killed someone else, then that worried me about this particular juror; so we exercised the challenge on him.

¶27. During the *Batson* hearing, the State gave the following reasons for exercising the challenge against Juror Bell:

BY MR. LITTLE: ...My notes reflect and I put in the record on page 342 of the prior proceeding that I challenged Mr. Bell for cause and that challenge was denied and I would refer the Court to page 322 of the record, where I had challenged him for cause. And then on page 342 of the record and I essentially used the same reason but Mr. Bell responded a lot on voir dire and wanted to know if Life meant life without parole and asked a lot of questions and was responsive to different things on voir dire but our position on that was that he was from his answers that he appeared to be leaning toward the thought with life without parole would be appropriate for death penalty. He was voir dired extensively and he talked about life without parole. I had concerns about him and those are concerns that I felt he was not leaning toward imposing the death penalty or it would not be fair to the proof in

regard to the death penalty.

¶28. The record indicates that the State had some concern with whether Juror Bell would truly consider imposing the death penalty. The State argues that Bell's questions regarding life without parole and other aspects of the case caused the prosecution to fear that he would avoid considering imposition of the death penalty in favor of a lesser sentence. It is significant that Berry offered no explanation to rebut any of the reasons offered by the State as to Juror Bell, either before the trial court or in his argument to this Court. The only mention of Juror Bell in Berry's brief is that, "[t]he state struck this juror because he was responsive on voir dire and asked if life meant life without parole." During the *Batson* hearing, defense counsel merely stated:

> BY MR. LEWIS: ...I'm not sure Albert Bell. I guess he, I suppose if he asked questions about the death penalty had he been close enough to having qualms about the death penalty or he couldn't return a verdict the judge would have stricken him because I'm certain he was challenged.

¶29. In determining whether a race-neutral explanation is pretextual, the burden remains with the opponent of the strike. *Spann v. State* 771 So.2d 883, 904 (Miss*.* 2000) (citing *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995)). Berry has made no effort to meet the burden of demonstrating that the State's explanations were pretextual. For this reason alone, the Court may find this issue to be without merit. We will, however, examine the relevant case law on this issue.

¶30. The State argues that opposition to the death penalty is a race neutral reason, citing *Jordan v. State*, 464 So.2d 475 (Miss. 1985), *vacated on other grounds*, *Jordan v. Mississippi*, 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986); *Turner v. State*, 573 So.2d 657, (Miss.1990); *Mack v. State*, 650 So.2d 1289 (Miss. 1994); and *Underwood v. State*, 708 So.2d 18 (Miss. 1998). Further, in *Manning v. State*, 735 So.2d 323, 340 (Miss. 1999), this Court stated that "[w]hile it is true that having no opinion about the death penalty may not be a legitimate justification, having doubts as to one's ability to follow the law and vote for the death penalty when appropriate is a sufficient race-neutral reason. *See also Johnson v. State*, 529 So.2d 577, 584-85 (Miss.1988). A challenge by the State based upon a juror's views on the death penalty is an acceptable race neutral reason. This Court, in *Mack v. State*, 650 So.2d 1289, (Miss.1994), stated:

> Mack's argument that conscientious scruples against the death penalty is not a race-neutral reason for striking a prospective juror when a challenge for cause has been denied against that juror must fail. Opposition to the death penalty is not in the same suspect classification as race and is therefore, a race neutral reason. *Turner v. State*, 573 So.2d 657, (Miss.1990) citing *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); *Johnson v. State*, 529 So.2d 577, 584 (Miss.1988) ("Scruples against the death penalty are clearly race neutral").

*Mack*, 650 So.2d at 1300. This Court has also held that "[t]he juror need not expressly state that he absolutely refuses to consider the death penalty; an equivalent response made in any reasonable manner which indicates that the juror's position is firm will suffice. *Willie v. State*, 585 So.2d 660, 673 (Miss. 1991), *overruled on other grounds*, *King v. State*, 784 So.2d 884 (Miss. 2001) (citing *Williamson v. State*, 512 So.2d at 881; *Stringer v. State*, 500 So.2d at 943 (citing *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841, 851-52 (1985))).

¶31. Based on the foregoing analysis, we conclude this issue is without merit as Berry has not demonstrated

that the race neutral reason given by the prosecution was pretextual.

<u>JUROR NO. 48, LORE G. STUBBS</u>:

¶32. In the original resentencing hearing, the prosecution attempted to strike Juror Stubbs for cause, stating:

BY MR. LITTLE: ...Forty-eight. I'm sorry. Forty-eight, Ms. Stubbs, again not a qualification, except that she had said she had diabetes and needed to eat and/or take medicine regularly. At 3:20 she was asleep. Earlier in the day she was asleep at one time, and she just did not appear to have the physical makeup to stay with us.

BY THE COURT: Mr. Bell

BY MR. BELL: She did say she had diabetes, but I believe in response to the judge's question she simply required a regular mealtime. I didn't have any notes about her being asleep . I don't believe that was called to the Court's attention.

BY THE COURT: I'm not going to excuse her.

¶33. When later called upon to state its reason for exercising a peremptory strike against Juror Stubbs, the district attorney stated:

BY MR. LITTLE: Forty- eight, Ms. Stubbs, I challenged her for cause She admitted or stated that she was a diabetic. As an officer of the Court I noticed her asleep on two occasions. I did not know at that time on the first occasion I do not know if it was before lunch or after lunch. I did notice she had fallen asleep at 3:20 p.m. I believe that's going to be during Mr. Bell's voir dire; and her juror card said she's disabled. She said she had been on a jury before, but when it says, "Did the jury reach a verdict?" Says, "I don't think so. It's been a long time ago."

¶34. During the remand hearing, the State again relied on part of the reason stated during the voir dire:

BY MR. LITTLE: 48, I have listed as Mrs. L O R E G Stubbs and that is the basis for challenging her for cause. She stated she was a diabetic, Justice Mills in his opinion found that that [sic] she had mentioned to the court that she was a diabetic in an earlier part of the voir dire. I noticed her to sleep on two occasions and I put in my notes by the end of the record and I see it in my notes from that time period that she was asleep at 3:20 p.m. I said I didn't know if she was asleep before or after lunch and I referred the court to page 343 of the record for my other reasons. She said on her juror card that she was disabled. She said she had been on a jury before and when we asked did she reach a verdict she said, I don't think so. It's been a long time ago. That did not indicate to me that she remembered very much about her jury service but the part that bothered me was if you sat on a jury and listened to a whole case it looks like you could remember what happened in the case and my thought about that was that she was not attentive and I want a juror that is attentive in a case as important as this one. So I used that as a basis for striking her.

¶35. As an explanation for striking Juror Stubbs, the State claimed that she had fallen asleep twice during voir dire. The State was also concerned with the fact that due to her diabetic condition, Juror Stubbs needed to eat at regular meal times. The trial court stated that her medical needs would be accommodated, but did not address her concerns about having to eat at regular meal times.

¶36. This Court has held, "[i]nattentiveness, boredom, dress, demeanor, unemployment, and sleeping during voir dire have all been determined by this Court to be racially neutral reasons. *Mack*, 650 So.2d at 1299; *see Griffin v. State*, 607 So.2d 1197, 1203 (Miss. 1992). *See also Hatten v. State*, 628 So.2d 294, 297 (Miss. 1993); *Abram v. State*, 606 So.2d 1015, 1036 (Miss. 1992). Further, in *Woodward v. State*, 533 So.2d 418 (Miss.1988), *vacated in part on other grounds*, *Windsor v. State*, 635 So.2d 805 (Miss. 1993), the Court addressed the issue of whether two venire persons had been properly stricken for cause. This Court held that "the trial judge did not err in excusing the sleeping juror or the tardy juror who took numerous medications, and who gave incoherent and contradictory answers." *Id.* at 424. Numerous other jurisdictions have held that the concern about inattentiveness of a potential juror because of a medical condition, and about his or her inability to sit through course of trial because of the condition, is a race-neutral reason. *See, e.g.*, *United States v. Dawn*, 897 F.2d 1444, 1447 (8th Cir. 1990); *Jackson v. State*, 640 So.2d 1025 (Ala. Crim. App. 1992), *overruled on other grounds*, *Windsor v. State*, 683 So.2d 1013 (Ala. Crim. App. 1993); *Alen v. State*, 596 So.2d 1083, 1091 n. 11 (Fla.Dist.Ct.App. 1992); *Scott v. State*, 522 S.E.2d 535, 538 (Ga.Ct.App. 1999); *Malone v. State*, 939 S.W.2d 782, 784 (Tex.Ct.App. 1997).

¶37. Berry argues that there is no record support for the allegation that Juror Stubbs was asleep. First, Berry failed to contemporaneously object to the prosecution's assertion that Juror Stubbs had fallen asleep. Defense counsel merely stated that he "didn't have any notes about her being asleep," and that he "[didn't] believe that was called to the Court's attention." The failure to make a contemporaneous objection waives the right of raising the issue on appeal. *Walker v. State*, 671 So.2d 581, 623 (Miss. 1996); *Ballenger v. State*, 667 So.2d 1242, 1259 (Miss.1995). Second, although lack of record support is one indication of pretext, the basis for the prosecutor's strikes need not be in the record. *See Manning*, 765 So.2d at 520; *Thorson*, 721 So.2d at 597-98 (prosecutor acting in good faith may offer a race-neutral reason supplied to him by a third party). We have previously accepted inattentiveness and sleeping as valid, race-neutral reasons for a peremptory strike, therefore we defer to the trial judge's acceptance of the reason offered by the prosecution in this case.

JUROR NO. 58, ROBERTA IVY:

¶38. No claim was raised regarding Juror Ivy in the original appeal of the resentencing trial. In the original resentencing transcript, Little appeared to be referring to Juror Stubbs instead of Juror Ivy. The language from the original resentencing trial is as follows:

> BY MR. LITTLE: Forty-eight, Ms. Stubbs, I challenged her for cause....Of course, she had the misconception on her juror information card in response to question number 14. It says, "Religious preference." She wrote the word "holiness." Now, someone from other areas of the country may not understand that response; and I may not understand that response; but that's not a religious preference to me. That indicates any type of mainline religion. I have experienced some of those jurors before. In all the experience I had, they did not believe they should judge other beliefs. I acknowledge she didn't say that. It still is the most unusual of any response to the religious preference in this particular jury panel, so I was fearful based on something that she didn't say it, but I was just fearful that she would not be in favor of the death penalty at all based on that particular response to her religious preference. She's had a couple of different jobs, which wasn't too bad; but that still bothered me.

(emphasis added).

¶39. At the *Batson* hearing, however, the district attorney clarified the record regarding Juror Ivy as follows:

> BY MR. LITTLE: ...Now the other part of the record is a little bit unclear on that. Now the last juror that was struck of the black race is number 58. And I had 58's name to be Mrs. Roberta Ivy. My notes on juror number 58, I have the word holiness and then I have that she did not respond to anything on voir dire. In the record on page 343 that appears to have run in with the challenge for cause on juror number 48. It does not appear from the record that we stopped talking about juror number 48 and started talking about juror number 58 but I represent to the Court that I am convinced that is what happened because I know on the record that we talked about all five challenges to black jurors. There is no reference to any other juror after this or in the record on page 343 and 344 and my notes that I have reviewed from the prior trial indicates the word holiness on her- - on the place where I took notes about her on my jury list. And then I went on to say that on the juror information card that she, under religious preference she wrote the word holiness and I explained on 344 my thoughts about that which are the same today and that is there are a lot of people are certain religions who choose not to sit in judgment of their fellow man and they have every right to do that. Now this lady did not respond to me on that but I know from experience that that is not like a main line religion like Methodist, Baptist, Presbyterian and I was concerned that even though she did not speak up that she would be some one who was unwilling to follow the law within the jury room or as she listened to the case. And I don't ever remember on this particular panel any other person mentioning that religious preference and having prosecuted in Union County for a long time even at that time I knew that not to be the normal religious preference of that county and I was fearful as I said in the record on page 344 that she was not in favor of the death penalty and that she was- - the religious preference bothered me. I felt she wouldn't be attentive to the law and the testimony that she had heard *and she also had several different jobs and my experience had been that jurors who had one job for a long time are usually more attentive to the court process than are people who change jobs a lot. And I said all that on page 344 of the record and I would ask the court to consider page 344 of the record together with whatever I could add to it today.*

(emphasis added).

¶40. In response to the State's explanations, Berry argues that Juror Ivy's card did not actually say "holiness;" rather, it said "Pentecostal," and that there was no voir dire regarding the "holiness" issue. Berry argues that whether someone is Pentecostal is unrelated to the facts of the case. Finally, Berry claims that the "holiness" reason is a "group-based trait."

¶41. This Court recently held in *Thorson v. State*, 721 So.2d 590 (Miss. 1998), that Mississippi constitutional and statutory law prohibit exercising peremptory challenges based solely on a person's religious beliefs. *Id.* at 593-596. In his brief, however, *Berry* does not challenge the striking of Juror Stubbs based on the *Thorson* holding.[(2)]

¶42. That aside, this Court has held that if there are other sufficient race neutral reasons stated by the prosecution, any error in basing the challenge on religious affiliation is harmless. *McGilberry v. State*, 741 So.2d 894, 922-23 (Miss. 1999) (citing *Thorson v. State*, 721 So.2d 590, 594-95 n. 6 (Miss. 1998) (since prosecutor gave other sufficient neutral reasons for the strike, the fact that he also cited religion is

harmless).

¶43. In the case sub judice, a sufficient race neutral reason was stated in the record. The State asserted that Juror Ivy had held several jobs over the last few years. In ***Davis v. State***, 660 So.2d 1228 (Miss. 1995), "employment history" and "short term employment" were included among the list of acceptable race neutral reasons for the exercise of peremptory strikes. ***Id.*** at 1242 (citing ***Lockett***, 517 So.2d at 1356)). In ***Fleming v. State***, 732 So.2d 172 (Miss. 1999), this Court held:

> Pursuant to ***Batson***, this Court has acknowledged that there are infinite number of grounds upon which a prosecutor reasonably may peremptorily strike a juror so long as the prosecutor presents clear and reasonably specific explanations for those reasons. ***Brewer v. State***, 725 So.2d 106 at 123 (Miss.1998) (citing ***Batson***, 476 U.S. at 98 n. 20, 106 S.Ct. 1712). Indeed, 'this Court has implicitly recognized that a prosecutor may follow his intuition so long as his judgment does not tell him that black jurors would be partial to the defendant because of their shared race.' ***Brewer v. State***, 725 So.2d at 123 (Miss.1998) (citations and quotations omitted). Among the reasons accepted as race-neutral are...*unemployment* [and] *employment history....****Foster v. State***, 639 So.2d 1263, 1280 (Miss.1994).

732 So.2d at 179-80 (emphasis added).

¶44. Since the State submitted a sufficiently race neutral reason for striking Juror Stubbs, and Berry failed to sufficiently rebut the race neutral reason, this Court holds that any possible error in basing a strike on Stubbs' stated religious preference is harmless error.

¶45. After examining the State's proffered reasons, we find that no overt discrimination was involved in the selection of Berry's jury. The reasons supplied by the State are neutral and supported by the record. Accordingly, the trial court's finding that the State articulated sufficiently race neutral explanations for its strikes is not clearly erroneous and is affirmed.

## II.

¶46. Berry contends that the trial judge's ruling was simply a conclusion and not a factual analysis of the reasons given by either side. At the conclusion of the ***Batson*** hearing, the trial judge ruled that:

> BY THE COURT: ...it's the opinion of the Court that the order of the Supreme Court has been followed as to the mechanics of this hearing that that has ben done and it's the Court's opinion that there has not been - - the State did not exercise any purposeful discrimination that would be in violation of ***Batson***; that there was no impermissible discrimination as defined in ***Batson***...and it's the Court's opinion that the State did, to the Court's satisfaction have rendered race neutral reasons for these challenges that satisfy the Court; that there has not been any discrimination in violation of ***Batson***. So the Court is going to deny the motion.

Next, the trial judge specifically asked the parties whether "the Court [has] addressed this as required under the decision of the Supreme Court so far as you are aware." Defense counsel replied:

> BY MR. LEWIS: Judge, if I understand the Court's ruling it's you understand that the district attorney has shown no discriminatory motive; that he has given clear and reasonably specific explanations of his peremptory challenges. And on the record you are making a factual determination of evaluating the

State's race neutral reasons and you fully except [sic] the weight and credibility of those reasons and I think you have followed the mandate.

Significantly, no objection was raised by the defense and no request for specific findings was made. Ordinarily, this issue would be procedurally barred on appeal by our rule requiring contemporaneous objection as a prerequisite to preservation of the issue on appeal. *See Chase v. State*, 699 So.2d 521, 531 (Miss. 1997). In death penalty cases the contemporaneous objection rule is applicable. *Flowers v. State*, 773 So.2d 309, 325 (Miss. 2000) (citing *Williams v. State*, 684 So.2d 1179, 1203 (Miss.1996); *Cole v. State*, 525 So.2d 365, 369 (Miss.1987) (holding that applicability of contemporaneous objection rule "is not diminished in a capital case"); *Lockett v. State*, 517 So.2d 1317, 1333 (Miss.1987), *vacated in part on other grounds sub nom.*, *Lockett v. Anderson*, 203 F.3d 695 (5th Cir. 2000)). If not procedurally barred the holding of the court below would be affirmed in accordance with the following reasoning.

¶47. In *Gary v. State*, 760 So.2d 743, 748 (Miss. 2000), this Court held:

> ...where a trial judge fails to elucidate such a specific explanation for each race neutral reason given, we will not remand the case for that *Batson*-related purpose alone. This Court is fully capable of balancing the *Batson* factors in cases such as this one. Continued remand of such cases only wastes the trial court's limited resources and acts to further delay justice.

*Id.* at 748.

¶48. The Court again addressed this issue in *Robinson v. State*, 761 So.2d 209 (Miss. 2000). In *Robinson*, the defendant made a *Batson* objection to the State's exercising all five of its peremptory challenges to strike African-Americans venirepersons. The trial court made blanket findings that the State's explanations "would be racially neutral reasons" and that it would "accept the representations of the officer of the court." The *Robinson* Court held that such blanket findings were insufficient and required a remand for a proper *Batson* hearing and the necessary on-the-record factual findings. *Robinson* differs somewhat from the present case, however, in light of the fact that defense counsel in *Robinson* specifically requested factual findings regarding whether or not a particular juror was sleeping. *Robinson*, 761 So.2d at 212. In the case at bar, the record reflects that not only did defense counsel fail to request specific findings, but counsel also clearly stated that he believed the trial judge had "followed the mandate" of this Court regarding this issue.

¶49. As the record in the case sub judice does not reveal that the peremptory strikes were used in such a way as to violate the *Batson* rule, the Court holds Berry's assignments of error are without merit.

## CONCLUSION

¶50. For these reasons as well as the reasons stated in *Berry v. State*, 703 So.2d 269 (Miss. 1997), the judgment of the Chickasaw County Circuit Court is affirmed.

¶51. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH BY LETHAL INJECTION AFFIRMED.**

**McRAE, P.J., SMITH, MILLS, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR. BANKS, P.J., CONCURS IN RESULT ONLY.**

<u>**APPENDIX**</u>

<u>**DEATH CASES AFFIRMED BY THIS COURT**</u>

*Stevens v. State*, So.2d (Miss. 2001).

*Mitchell v. State,* -- So.2d -- (Miss. 2001).

*Puckett v. State,* 788 So.2d 752 (Miss. 2001). * following remand.

*Goodin v. State,* 787 So.2d 639 (Miss. 2001).

*Jordan v. State,* 786 So.2d 987 (Miss. 2001).

*Manning v. State,* 765 So.2d 516 (Miss. 2000). *following remand.

*Eskridge v. State,* 765 So.2d 508 (Miss. 2000).

*McGilberry v. State,* 741 So. 2d 894 (Miss. 1999)*.*

*Puckett v. State,* 737 So. 2d 322 (Miss. 1999). *remanded for *Batson* hearing.

*Manning v. State,* 735 So. 2d 323 (Miss. 1999). *remanded for *Batson* hearing.

*Hughes v. State,* 735 So. 2d 238 (Miss. 1999).

*Turner v. State,* 732 So. 2d 937 (Miss. 1999).

*Smith v. State,* 729 So. 2d 1191 (Miss. 1998).

*Burns v. State,* 729 So. 2d 203 (Miss. 1998).

*Jordan v. State,* 728 So. 2d 1088 (Miss. 1998).

*Gray v. State,* 728 So. 2d 36 (Miss. 1998).

*Manning v. State,* 726 So. 2d 1152 (Miss. 1998).

*Woodward v. State,* 726 So. 2d 524 (Miss. 1997).

*Bell v. State,* 725 So. 2d 836 (Miss. 1998).

*Evans v. State,* 725 So. 2d 613 (Miss. 1997).

*Brewer v. State,* 725 So. 2d 106 (Miss. 1998).

*Crawford v. State,* 716 So. 2d 1028 (Miss. 1998).

*Doss v. State,* 709 So. 2d 369 (Miss. 1996).

*Underwood v. State,* 708 So. 2d 18 (Miss. 1998).

*Holland v. State,* 705 So. 2d 307 (Miss. 1997).

*Wells v. State,* 698 So. 2d 497 (Miss. 1997).

*Wilcher v. State,* 697 So. 2d 1087 (Miss. 1997).

*Wiley v. State,* 691 So. 2d 959 (Miss. 1997).

*Brown v. State*, 690 So. 2d 276 (Miss. 1996).

*Simon v. State*, 688 So. 2d 791 (Miss.1997).

*Jackson v. State*, 684 So. 2d 1213 (Miss. 1996).

*Williams v. State,* 684 So. 2d 1179 (Miss. 1996).

*Davis v. State,* 684 So. 2d 643 (Miss. 1996).

*Taylor v. State*, 682 So. 2d. 359 (Miss. 1996).

*Brown v. State*, 682 So. 2d 340 (Miss. 1996).

*Blue v. State*, 674 So. 2d 1184 (Miss. 1996).

*Holly v. State*, 671 So. 2d 32 (Miss. 1996).

*Walker v. State*, 671 So. 2d 581(Miss. 1995).

*Russell v. State*, 670 So. 2d 816 (Miss. 1995).

*Ballenger v. State*, 667 So. 2d 1242 (Miss. 1995).

*Davis v. State*, 660 So. 2d 1228 (Miss. 1995).

*Carr v. State*, 655 So. 2d 824 (Miss. 1995).

*Mack v. State*, 650 So. 2d 1289 (Miss. 1994).

*Chase v. State*, 645 So. 2d 829 (Miss. 1994).

*Foster v. State*, 639 So. 2d 1263 (Miss. 1994).

*Conner v. State*, 632 So. 2d 1239 (Miss. 1993).

*Hansen v. State*, 592 So. 2d 114 (Miss. 1991).

**\*Shell v. State**, 554 So. 2d 887 (Miss. 1989), **Shell v. Mississippi,** 498 U.S. 1 (1990) reversing, in part, and remanding, **Shell v. State**, 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

**Davis v. State**, 551 So. 2d 165 (Miss. 1989).

**Minnick v. State**, 551 So. 2d 77 (Miss. 1989).

**\*Pinkney v. State**, 538 So. 2d 329 (Miss. 1989), **Pinkney v. Mississippi**, 494 U.S. 1075 (1990) vacating and remanding **Pinkney v. State**, 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

**\*Clemons v. State**, 535 So. 2d 1354 (Miss. 1988), **Clemons v. Mississippi**, 494 U.S. 738 (1990) vacating and remanding, **Clemons v. State**, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

**Woodward v. State**, 533 So. 2d 418 (Miss. 1988).

**Nixon v. State**, 533 So. 2d 1078 (Miss. 1987).

**Cole v. State**, 525 So. 2d 365 (Miss. 1987).

**Lockett v. State**, 517 So. 2d 1346 (Miss. 1987).

**Lockett v. State**, 517 So. 2d 1317 (Miss. 1987).

**Faraga v. State**, 514 So. 2d 295 (Miss. 1987).

**\*Jones v. State**, 517 So. 2d 1295 (Miss. 1987)**, Jones v. Mississippi**, 487 U.S. 1230 (1988) vacating and remanding, **Jones v. State**, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.

**Wiley v. State**, 484 So. 2d 339 (Miss. 1986).

**Johnson v. State**, 477 So. 2d 196 (Miss. 1985).

**Gray v. State**, 472 So. 2d 409 (Miss. 1985).

## DEATH CASES AFFIRMED BY THIS COURT

### (continued)

**Cabello v. State**, 471 So. 2d 332 (Miss. 1985).

**Jordan v. State**, 464 So. 2d 475 (Miss. 1985).

**Wilcher v. State**, 455 So. 2d 727 (Miss. 1984).

**Billiot v. State**, 454 So. 2d 445 (Miss. 1984).

**Stringer v. State**, 454 So. 2d 468 (Miss. 1984).

**Dufour v. State**, 453 So. 2d 337 (Miss. 1984).

*Neal v. State*, 451 So. 2d 743 (Miss. 1984).

*Booker v. State*, 449 So. 2d 209 (Miss. 1984).

*Wilcher v. State*, 448 So. 2d 927 (Miss. 1984).

*Caldwell v. State*, 443 So. 2d 806 (Miss. 1983).

*Irving v. State*, 441 So. 2d 846 (Miss. 1983).

*Tokman v. State*, 435 So. 2d 664 (Miss. 1983).

*Leatherwood v. State*, 435 So. 2d 645 (Miss. 1983).

*Hill v. State*, 432 So. 2d 427 (Miss. 1983).

*Pruett v. State*, 431 So. 2d 1101 (Miss. 1983).

*Gilliard v. State*, 428 So. 2d 576 (Miss. 1983).

*Evans v. State*, 422 So. 2d 737 (Miss. 1982).

*King v. State*, 421 So. 2d 1009 (Miss. 1982).

*Wheat v. State*, 420 So. 2d 229 (Miss. 1982).

*Smith v. State*, 419 So. 2d 563 (Miss. 1982).

*Johnson v. State*, 416 So. 2d 383 (Miss.1982).

*Edwards v. State*, 413 So. 2d 1007 (Miss. 1982).

*Bullock v. State*, 391 So. 2d 601 (Miss. 1980).

*Reddix v. State*, 381 So. 2d 999 (Miss. 1980).

*Jones v. State*, 381 So. 2d 983 (Miss. 1980).

## **DEATH CASES AFFIRMED BY THIS COURT**

### **(continued)**

*Culberson v. State*, 379 So. 2d 499 (Miss. 1979).

*Gray v. State*, 375 So. 2d 994 (Miss. 1979).

*Jordan v. State*, 365 So. 2d 1198 (Miss. 1978).

*Voyles v. State*, 362 So. 2d 1236 (Miss. 1978).

*Irving v. State*, 361 So. 2d 1360 (Miss. 1978).

*Washington v. State*, 361 So. 2d 6l (Miss. 1978).

*Bell v. State*, 360 So. 2d 1206 (Miss. 1978).

\* Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

## DEATH CASES REVERSED AS TO GUILT PHASE

## AND SENTENCE PHASE

*Randall v. State,* -- So. 2d -- (Miss. 2001).

*Flowers v. State,* 773 So.2d 309 (Miss. 2000).

*Edwards v. State,* 737 So. 2d 275 (Miss. 1999).

*Smith v. State,* 733 So. 2d 793 (Miss. 1999).

*Porter v. State,* 732 So.2d 899 (Miss. 1999).

*Kolberg v. State,* 704 So. 2d 1307 (Miss. 1997).

*Snelson v. State,* 704 So. 2d 452 (Miss. 1997).

*Fusilier v. State,* 702 So. 2d 388 (Miss. 1997).

*Howard v. State,* 701 So. 2d 274 (Miss. 1997).

*Lester v. State,* 692 So. 2d 755 (Miss. 1997).

*Hunter v. State*, 684 So. 2d 625 (Miss. 1996).

*Lanier v. State*, 684 So. 2d 93 (Miss. 1996).

*Giles v. State,* 650 So. 2d 846 (Miss. 1995).

*Duplantis v. State*, 644 So. 2d 1235 (Miss. 1994).

*Harrison v. State*, 635 So. 2d 894 (Miss. 1994).

*Butler v. State*, 608 So. 2d 314 (Miss. 1992).

*Jenkins v. State*, 607 So. 2d 1171 (Miss. 1992).

*Abram v. State*, 606 So. 2d 1015 (Miss. 1992).

*Balfour v. State*, 598 So. 2d 731 (Miss. 1992).

*Griffin v. State*, 557 So. 2d 542 (Miss. 1990).

*Bevill v. State*, 556 So. 2d 699 (Miss. 1990).

*West v. State*, 553 So. 2d 8 (Miss. 1989).

*Leatherwood v. State*, 548 So. 2d 389 (Miss. 1989).

*Mease v. State*, 539 So. 2d 1324 (Miss. 1989).

*Houston v. State*, 531 So. 2d 598 (Miss. 1988).

**DEATH CASES REVERSED AS TO GUILT PHASE**

**<u>AND SENTENCE PHASE</u>**

(**continued**)

*West v. State*, 519 So. 2d 418 (Miss. 1988).

*Davis v. State*, 512 So. 2d 129l (Miss. 1987).

*Williamson v. State*, 512 So. 2d 868 (Miss. 1987).

*Foster v. State*, 508 So. 2d 1111 (Miss. 1987).

*Smith v. State*, 499 So. 2d 750 (Miss. 1986).

*West v. State*, 485 So. 2d 681 (Miss. 1985).

*Fisher v. State*, 481 So. 2d 203 (Miss. 1985).

*Johnson v. State*, 476 So. 2d 1195 (Miss. 1985).

*Fuselier v. State*, 468 So. 2d 45 (Miss. 1985).

*West v. State*, 463 So. 2d 1048 (Miss. 1985).

*Jones v. State*, 461 So. 2d 686 (Miss. 1984).

*Moffett v. State*, 456 So. 2d 714 (Miss. 1984).

*Lanier v. State*, 450 So. 2d 69 (Miss. 1984).

*Laney v. State*, 421 So. 2d 1216 (Miss. 1982).

**DEATH CASES REVERSED**

**AS TO PUNISHMENT AND REMANDED**

**<u>FOR RESENTENCING TO LIFE IMPRISONMENT</u>**

*Reddix v. State*, 547 So. 2d 792 (Miss. 1989).

*Wheeler v. State*, 536 So. 2d 1341 (Miss. 1988).

*White v. State*, 532 So. 2d 1207 (Miss. 1988).

*Bullock v. State* , 525 So. 2d 764 (Miss. 1987).

*Edwards v. State*, 441 So. 2d 84 (Miss. l983).

*Dycus v. State*, 440 So. 2d 246 (Miss. 1983).

*Coleman v. State*, 378 So. 2d 640 (Miss. 1979).

## DEATH CASES REVERSED AS TO

## PUNISHMENT AND REMANDED FOR A NEW TRIAL

## <u>ON SENTENCING PHASE ONLY</u>

*King v. State,* 784 So.2d 884 (Miss. 2001).

*Walker v. State,* 740 So.2d 873 (Miss. 1999).

*Watts v. State,* 733 So.2d 214 (Miss. 1999).

*West v. State,* 725 So. 2d 872 (Miss. 1998).

*Smith v. State*, 724 So. 2d 280 (Miss. 1998).

*Berry v. State,* 703 So. 2d 269 (Miss. 1997).

*Booker v. State*, 699 So. 2d 132 (Miss. 1997).

*Taylor v. State*, 672 So. 2d 1246 (Miss. 1996).

**\*Shell v. State**, 554 So. 2d 887 (Miss. 1989), **Shell v. Mississippi**, 498 U.S. 1 (1990) reversing, in part, and remanding, **Shell v. State** 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

\***Pinkney v. State**, 538 So. 2d 329 (Miss. 1989), **Pinkney v. Mississippi,** 494 U.S. 1075 (1990) vacating and remanding, **Pinkney v. State,** 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

**\*Clemons v. State**, 535 So. 2d 1354 (Miss. 1988), **Clemons v. Mississippi**, 494 U.S. 738 (1990) vacating and remanding, **Clemons v. State**, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

**\*Jones v. State**, 517 So. 2d 1295 (Miss. 1987), **Jones v. Mississippi,** 487 U.S. 1230 (1988) vacating and remanding, **Jones v. State**, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.

*Russell v. State*, 607 So. 2d 1107 (Miss. 1992).

*Holland v. State*, 587 So. 2d 848 (Miss. 1991).

*Willie v. State*, 585 So. 2d 660 (Miss. 1991).

*Ladner v. State*, 584 So. 2d 743 (Miss. 1991).

*Mackbee v. State*, 575 So. 2d 16 (Miss. 1990).

**DEATH CASES REVERSED AS TO**

**PUNISHMENT AND REMANDED FOR A NEW TRIAL**

**ON SENTENCING PHASE ONLY**

**(continued)**

*Berry v. State*, 575 So. 2d 1 (Miss. 1990).

*Turner v. State*, 573 So. 2d 657 (Miss. 1990).

*State v. Tokman*, 564 So. 2d 1339 (Miss. 1990).

*Johnson v. State*, 547 So. 2d 59 (Miss. 1989).

*Williams v. State*, 544 So. 2d 782 (Miss. 1989); *sentence aff'd* 684 So. 2d 1179 (1996).

*Lanier v. State*, 533 So. 2d 473 (Miss. 1988).

*Stringer v. State*, 500 So. 2d 928 (Miss. 1986).

*Pinkton v. State*, 481 So. 2d 306 (Miss. 1985).

*Mhoon v. State*, 464 So. 2d 77 (Miss. 1985).

*Cannaday v. State*, 455 So. 2d 713 (Miss. 1984).

*Wiley v. State*, 449 So. 2d 756 (Miss. 1984); resentencing affirmed, *Wiley v. State*, 484 So. 2d 339 (Miss. 1986), *cert. denied Wiley v. Mississippi*, 479 U.S. 1036 (1988); resentencing ordered, *Wiley v. State*, 635 So. 2d 802 (Miss. 1993) following writ of habeas corpus issued pursuant to *Wiley v. Puckett*, 969 So. 2d 86, 105-106 (5th Cir. 1992); resentencing affirmed, *Wiley v. State*, 95-DP-00149, February 13, 1997 (rehearing pending).

*Williams v. State*, 445 So. 2d 798 (Miss. 1984).

* Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

1. The State points out that the trial court considered the record of the voir dire in the resentencing hearing in reaching its decision in the *Batson* hearing. Specifically, the record states:

But it appears to the Court from having had an opportunity to go back over the record of that voir dire and the hearings in chambers that were conducted in concert with that voir dire that the...district attorney gave to the Court explanations for his reasons for striking those and the Court by it's - - in light of the jury panel as it was in effect did pass on the **Batson** objection. The mistake was made, the Court never obviously - - the court never affirmatively said that the court acknowledges that there is a **Batson** question under **Powers** and rules that there is or whatever. *So having had an opportunity to go review the record and I had a copy of the transcript prepared some several weeks ago when this opinion came down and I have had an opportunity to go over it.*

(emphasis added).

2. It is understandable why **Thorson** was not raised at the **Batson** hearing in this case as the hearing was held on January 16, 1998, and **Thorson** was not decided until August 20, 1998.