# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-DP-00144-SCT

*ROGER THORSON, a/k/a ROGER ERIC THORSON*

*v.*

*STATE OF MISSISSIPPI*

### CONSOLIDATED WITH

### 90-DP-00015-SCT

*ROGER ERIC THORSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/02/95 |
| TRIAL JUDGE: | HON. JERRY OWEN TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | HENRY DALE ROBINSON |
| | ELIZABETH JANE HICKS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LESLIE L. LEE |
| DISTRICT ATTORNEY: | CONO CARANNA |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - DIRECT APPEAL |
| DISPOSITION: | REVERSED AND REMANDED - 8/20/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/10/98 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE AND FACTS

¶1. Roger Eric Thorson was convicted of capital murder by a Walthall County Circuit Court jury and sentenced to death by lethal injection. In September of 1988, Thorson timely appealed to this Court and we affirmed the trial court on all issues except the *Batson* issue. *Thorson v. State*, 653 So. 2d 876 (Miss. 1994). Upon remand, the trial judge found no *Batson* violation and held that Thorson was not entitled to a new trial. From this finding, Thorson appeals.

### ISSUES

**I. WHETHER THE TRIAL COURT ERRED IN HOLDING THAT THORSON WAS REQUIRED TO PRESENT A PRIMA FACIE SHOWING OF DISCRIMINATION IN JURY SELECTION.**

**II. WHETHER THE REASONS PROFFERED BY THE STATE FOR EXERCISING ITS PEREMPTORY CHALLENGES WERE PRETEXTUAL OR RACE-NEUTRAL.**

**III. WHETHER THE STATE VIOLATED THE FIRST AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION BY STRIKING TWO JURORS ON THE BASIS OF THEIR RELIGIOUS BELIEFS.**

**IV. WHETHER THE TRIAL COURT ERRED IN DENYING THORSON'S MOTION FOR AN EXPERT IN STATISTICS.**

**V. WHETHER THE TRIAL COURT ERRED IN DENYING THORSON'S MOTION FOR DISCOVERY PRIOR TO THE *BATSON* HEARING.**

**VI. WHETHER THE TRIAL COURT ERRED IN REFUSING TO ALLOW THORSON TO EFFECTIVELY CROSS-EXAMINE THE PROSECUTOR.**

**VII. WHETHER THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTION TO RELY ON THIRD-PARTY INFORMATION AS REASON FOR STRIKING JURORS.**

**VIII. WHETHER THE TRIAL COURT ERRED IN DENYING THORSON'S MOTION FOR A CONTINUANCE TO PREPARE CROSS-EXAMINATION AND REBUTTAL.**

### DISCUSSION

**I. WHETHER THE TRIAL COURT ERRED IN HOLDING THAT THORSON WAS**

**REQUIRED TO PRESENT A PRIMA FACIE SHOWING OF DISCRIMINATION IN JURY SELECTION.**

¶2. A *Batson* challenge to a peremptory strike should proceed as follows: First, the defendant must establish a prima facie case of discrimination in the selection of jury members. *Berry v. State* 703 So.2d 269 (Miss. 1997)( *citing* *Batson v. Kentucky*, 476 U.S. 79 (1986).). The prosecution then has the burden of stating a racially neutral reason for the challenged strike. If the State gives a racially neutral explanation, the defendant can rebut the explanation. Finally, the trial court must make a factual finding to determine if the prosecution engaged in purposeful discrimination. If the defendant fails to rebut, the trial judge must base his decision on the reasons given by the State.

¶3. Thorson asserts that the trial judge erroneously required him to make a prima facie showing of the *Batson* criteria. He claims that this Court would not have remanded his case for a *Batson* hearing if we had not already found that he made a prima facie case of discrimination. Thus, he contends that the trial court erred in asking him to make a prima facie case of discrimination. This contention is unsupported by the record, unnecessary for our holding today, and unworthy of further analysis herein.

**II. WHETHER THE REASONS PROFFERED BY THE STATE FOR EXERCISING ITS PEREMPTORY CHALLENGES WERE PRETEXTUAL OR RACE-NEUTRAL?**

¶4. We give great deference to the trial court's findings of whether or not a peremptory challenge was race neutral. *Simon v. State*, 679 So.2d 617, 621 (Miss. 1996). Such deference is necessary because finding that a striking party engaged in discrimination is largely a factual finding and thus should be accorded appropriate deference on appeal. *Hernandez v. New York*, 500 U.S. 352, 367-68 (1991); *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-75 (1985). Indeed, we will not overrule a trial court on a *Batson* ruling unless the record indicates that the ruling was clearly erroneous or against the overwhelming weight of the evidence. *Lockett v. State*, 517 So.2d 1346, 1350 (Miss. 1987).

¶5. As stated *supra*, determining whether there has been a *Batson* violation involves a three step process. The second step of the process entails submission by the state of a race neutral reason for striking a particular juror. At this point, the trial judge should accept the reason if it appears valid on its face. *Hernandez*, 500 U.S. at 360. The state's reason shall be deemed facially valid unless the prosecutor's explanation embodies inherent discriminatory intent. *Id.* After affording the defendant an opportunity to rebut, the trial court should proceed to the third step of *Batson* and determine whether or not the opponent of the strike has proven intentional discrimination. *Batson*, 476 U.S. at 98. At this stage, the trial court determines if the reasons given by the prosecution were pretexts for intentional discrimination.

¶6. The trial judge in the case *sub judice* submitted an eleven page finding of facts in which the judge reviewed the state's reasons for each of its strikes and determined that they were not racially motivated. Since these issues are not dispositive herein, we do not address the individual strikes.

**III. WHETHER THE STATE VIOLATED THE FIRST AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION BY STRIKING TWO JURORS ON THE BASIS OF THEIR RELIGIOUS BELIEFS.**

¶7. Thorson maintains that the trial judge erred in holding that the State did not violate the Equal Protection Clause when the prosecutor struck two jurors based on their religious beliefs. He is referring to the fact that the State struck Patty Jackson and Margaret Peters because they were members of the Holiness faith. Thorson asserts that striking a person based on her religious beliefs is tantamount to striking a juror based on her race or gender. He claims that by striking a person based on her religious beliefs, the prosecutor not only violated the Equal Protection clause, but also violated Section 13-5-2 of the Mississippi Code of 1972, as amended.

¶8. The issue of whether or not a juror may be struck based on his religious preference alone has not yet been decided by the United States Supreme Court. In fact, the Supreme Court denied certiorari in a case in which the Supreme Court of Minnesota held that peremptory strikes based on religious affiliation were Constitutional. *See **State v. Davis***, 504 N.W. 2d 767 (Minn. 1993), *cert. denied*, 511 U.S. 1115 (1994). A majority of jurisdictions have declined to extend the ***Batson*** holding to include religion, but instead have held that individual state constitutions prohibit exercising peremptory challenges on the basis of religious affiliation.[1] Contra, a growing number of jurisdictions have held that religious affiliation is a valid reason for striking potential jurors. [2] There are also some jurisdictions which have not specifically addressed the issue of whether or not religion based strikes are Constitutional, but have held that peremptory strikes based on religion are sufficient race-neutral ***Batson*** reasons.[3] Finally, a minority of jurisdictions have held that ***Batson*** protection extends beyond race and incorporates religious groups.[4] We find that Mississippi Constitutional and Statutory law prohibit exercising peremptory challenges based solely on a person's religious beliefs. Article 3, Section 18 of the Mississippi Constitution decrees in part that:

> No religious test as a qualification for office shall be required; and no preference shall be given by law to any religious sect or mode of worship; but the free enjoyment of all religious sentiments and the different modes of worship shall be held sacred....

Section 18 prohibits preference to any particular religion and insures that each citizen of this state shall enjoy freedom of worship. Peremptory challenges based on a person's membership in a particular religious order or denomination violate our State Constitution by permitting preference of one religion over another. Serving on a jury is a right, privilege and responsibility of all our citizens. We will not allow the State or any other party to impede a citizen's rights to participate in our legal proceedings based solely on his or her religion.

¶9. In addition to our Constitution, Mississippi statutory law clearly prohibits peremptory challenges based on religion. Miss. Code Ann. § 13-5-2 reads:

> It is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens have the opportunity in accordance with this chapter to be considered for jury service in this state and an obligation to serve as jurors when summoned for that purpose. **A citizen shall not be excluded from jury service in this state on account of race, color, religion, sex, national origin, or economic status.**

Miss. Code Ann. § 13-5-2 (Supp. 1997) (emphasis added). This statute mandates that the jury pool be selected from a random cross-section of the population. It also prohibits excluding a person from

serving on a jury based on her race, color, religion, sex, national origin, or economic status. This chapter of our code is not limited only to grand jury proceedings. It applies equally, unless stated otherwise, to all jury proceedings. It follows that peremptory strikes cannot be exercised to exclude a juror for any of these reasons.[(5)] Thus, Mr. Grissom violated this statute when he struck Patty Jackson solely because she was a member of the Holiness Faith.[(6)]

¶10. Religion or lack thereof is an inseparable part of a person's character. Unlike race and gender, religious beliefs are not ordained at birth. A person may belong to a particular religious group without adopting all of the tenets and dogma of that religion. The critical determination is an individual's beliefs, not the doctrines or dogma espoused by her religion.

¶11. In the case *sub judice*, Grissom testified that he struck Ms. Jackson because she belonged to the Holiness Faith. He maintained that members of the Holiness Faith did not like to sit in judgment of their fellow man, and thus, they did not make good jurors. The critical question Grissom should have asked Jackson was whether or not she felt that she could sit in judgment of her fellow man regardless of the position of the Holiness Faith. If this question had evinced that she could not, then Grissom would have had a valid reason for striking her. Thus, while we will permit a party to strike a potential juror for her actual beliefs, even if that belief springs from her religion, we will not allow challenges based solely on a potential jurors' religious affiliation. An individual's affiliation with the religious group of his or her choice shall not be a badge of second class citizenship in Mississippi. Therefore, we must reverse and remand for a new trial before a jury untainted by religious bias.

## IV. WHETHER THE TRIAL COURT ERRED IN DENYING THORSON'S MOTION FOR AN EXPERT IN STATISTICS.

¶12. Thorson argues that the trial court erred in failing to award funds to hire an expert statistician prior to the ***Batson*** hearing. We have held that whether an expert's testimony is admitted should be at the sound discretion of the trial judge. *Roberts v. Grafe Auto Co.,* 701 So.2d 1093, 1098 (Miss. 1997). Unless we find that the trial court is clearly erroneous or abused discretion, we will not reverse on this issue. *Roberts*, 701 So.2d at 1098; *Seal v. Miller*, 605 So.2d 240, 243 (Miss. 1992). Since the present record on appeal lacks "sufficient evidence" to support this assignment of error, we can not find that the trial judge erred in denying Thorson's request for an expert. *Hansen v. State*, 592 So.2d 114, 127 (Miss. 1991). It is therefore unnecessary to address this issue further.

## V. WHETHER THE TRIAL COURT ERRED IN DENYING THORSON'S MOTION FOR DISCOVERY PRIOR TO THE BATSON HEARING?

¶13. Prior to the hearing, Thorson filed a motion for discovery attempting to obtain copies of all notes made by the district attorney or his assistants relating to voir dire and jury selection in the trial of this case. The trial judge originally granted this motion, but he subsequently set aside his order granting discovery and overruled the motion.

¶14. The State asserts that Thorson was not entitled to this material according to Uniform Circuit and County Court Rule 9.04(B)(1), which mandates:

> *Work Product*. Disclosure shall not be required of legal research or of records, correspondence, reports, or memoranda to the extent that they contain the opinions, theories, or conclusions of

the prosecuting or defense attorney or members of legal staff.

U.R.C.C.C. 9.04 (B) (1). The State submits that the prosecutor's notes regarding potential jurors contained opinions, theories and conclusions of the prosecutor which were not discoverable under this rule.

¶15. We ruled on a similar issue in *Mack v. State*, 650 So.2d 1289 (Miss. 1994). In *Mack*, the appellant contended that the prosecutor had violated Uniform Criminal Rule of Circuit Court 4.06 by not giving him information on a potential juror. *Mack,* 650 So.2d at 1299. The prosecution had exercised a peremptory challenge against a venire person because she had written bad checks in the past. *Id.* The appellant argued that the prosecution should have furnished him with this information prior to trial. We held that Rule 4.06 did not require the prosecution to provide the defense with information about potential jurors unless that information concerned a juror's ability to be fair and impartial. Likewise, we now find that the defense is not entitled to discover a prosecutor's notes made about jurors during the voir dire.

¶16. Thorson argues that he needs these notes to help him rebut the State's race neutral reason. Thorson was already entitled to the transcript of the voir dire and the jury questionnaires. These were sufficient to help him prepare for the *Batson* hearing. The personal notes of the prosecutor made during voir dire almost certainly contain the prosecutor's opinions and theories. The Work Product Doctrine in Rule 9.04 (B)(1) is intended to protect a party's opinions and theories from his opponent. Several jurisdictions have already addressed this issue and held that a defendant is not entitled to discover prosecutor's notes made during voir dire in order to prepare for a *Batson* hearing.[7] Today, we join these jurisdictions and hold that the trial court was correct in denying Thorson's request to obtain notes made by the prosecution during jury selection.

## VI. WHETHER THE TRIAL COURT ERRED IN REFUSING TO ALLOW THORSON TO EFFECTIVELY CROSS-EXAMINE THE PROSECUTOR.

¶17. Thorson also asserts that the trial court erred by not allowing him to extensively cross-examine Grissom. The trial judge informed Thorson that the only cross-examination of Grissom that he would allow would be "simple clarification as to something that is on the document that was used by the district attorney in today's testimony...". The trial judge reasoned that if he had required the prosecution to give race-neutral reasons at the trial, the defendant would have been able to rebut those reasons, but he would not have been able to cross-examine the prosecutor. Thus, the trial judge concluded that Thorson should not be able to extensively cross examine the prosecutor during the *Batson* hearing.

¶18. In *Batson v. Kentucky*, the Supreme Court expressly declined to impose a procedure on the lower courts defining how a *Batson* hearing should be conducted. *Batson*, 476 U.S. at 99 n.24. In *United States v. Garrison*, the Court held that the appellant misconstrued the purpose of a *Batson* hearing when he insisted that he was entitled to an evidentiary hearing in which the prosecutor and defense attorney could be examined and cross examined. *United States v. Garrison* , 849 F.2d 103, 106 (4th Cir. 1988). The *Garrison* Court noted that a *Batson* inquiry was not meant to be an intrusion on the trial proceedings, but rather an opportunity for the prosecutor to articulate a race neutral reason for striking a juror in the particular case. *Garrison*, 849 F.2d at 106. Although adversarial, the nature of a *Batson* hearing does not rise to the level of a mini-trial, and the defendant

is not entitled to cross-examine the prosecutor. *United States v. Roan Eagle*, 867 F.2d 436, 441 (8th Cir. 1989).

¶19. In the case *sub judice*, the state presented a race-neutral reason for each venire person it struck. Thorson was even given a limited opportunity to cross-examine the prosecutor regarding the notes on which he based his testimony. This opportunity was more than he would have been entitled to if the prosecutor had been required to enumerate his race-neutral reasons at trial and the case had not been remanded for a *Batson* hearing. It was never intended that a *Batson* hearing be a full blown evidentiary hearing, and we choose to follow the majority of jurisdictions that have already held that a defendant is not entitled to cross-examine the prosecutor at a *Batson* hearing[8]. Thus, we find that the trial court was correct in not allowing a full-blown cross-examination of the prosecutor.

## VII. WHETHER THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTION TO RELY ON THIRD-PARTY INFORMATION AS A REASON FOR STRIKING JURORS.

¶20. Next, Thorson alleges that the trial court erred in allowing Grissom to rely on information supplied by a third-party as a reason for striking a juror. Thorson is referring to the fact that Grissom testified that one of the reasons he struck Ella Carr was because a deputy informed him that she had some family members who had had entanglements with the law.

¶21. Thorson cites several cases from Georgia and South Carolina to support his assertion that when a prosecutor relies on information or advice from a third party during jury selection, he must prove that the third person's reasons were not motivated by race in order to survive a *Batson* challenge. *Lewis v. State,* 424 S.E.2d 626,628 (Ga. 1993); *Congdon v. State*, 424 S.E.2d 630 (Ga. 1993); *Covin v. State*, 449 S.E. 2d 550 (Ga. Ct. App.1994); *State v. Adams*, 415 S.E.2d 402 (S.C. 1992). The cases which Thorson cites all involve situations in which the prosecutor stated that his race-neutral reason was that some third person had asked him to strike the juror. For example, in *Lewis* the prosecutor stated that he struck two black jurors because the victim's wife, who was also black, requested that he strike them. *Lewis,* 424 S.E. 2d at 627-28. The *Lewis* Court held that in order for reliance on a third person to survive a *Batson* challenge, the State must set forth a racially-neutral, case-related reason underlying the third person's decision. *Id*. at 628.

¶22. The case *sub judice* is distinguishable from the cases cited by Thorson because in this case Grissom did provide a racially neutral reason that the deputy relied upon. Grissom testified that the deputy's reason for suggesting that Ella Carr would not be a good juror was that she had family members who had had entanglements with the law. A venire person being related to a person who has had entanglements with the law is a sufficient race-neutral reason. *Lockett v. State*, 517 So.2d 1346, 1351 (Miss. 1987). Therefore, Grissom's reason for striking Carr survives a *Batson* challenge.

¶23. Further, in *Collins v. State*, we held that it was of no consequence that the State's information obtained from law enforcement officers that a particular venire person was involved in criminal activity was not in the record. *Collins v. State*, 691 So.2d 918, 926-27 (Miss. 1997). It should be emphasized that a trial court's determination of whether or not a reason is race-neutral largely depends on the credibility of the prosecutor. *Lockett* , 517 So.2d at 1352. We have not set any limits on the prosecutor using legitimate informational sources to obtain facts about prospective jurors. *Collins*, 691 So.2d at 927 n.4 (*citing Lockett,* 517 So.2d at 1352). Thus, if a prosecutor in good faith offers a race-neutral reason supplied to him by a third person, then that reason should overcome

a ***Batson*** challenge.

¶24. In the present case, the deputy was a legitimate informational source available to provide the prosecutor information about prospective jurors. Additionally, the reason the deputy gave Grissom regarding Ella Carr was a race-neutral reason. Therefore, the trial court did not err in allowing the prosecutor to use a reason based on the deputy's information as a valid, race-neutral reason to strike Ella Carr.

## VIII. WHETHER THE TRIAL COURT ERRED IN DENYING THORSON'S MOTION FOR A CONTINUANCE TO PREPARE CROSS-EXAMINATION AND REBUTTAL.

¶25. Thorson's final assignment of error is that the trial court erred when he denied Thorson's request for a continuance to prepare for cross-examination and rebuttal. After Mr. Grissom testified, Thorson requested a continuance so that he could review the notes Grissom used during his testimony to prepare cross-examination and rebuttal. The trial judge denied this motion and instructed defense counsel that he would allow an hour and one half lunch break in which the defense counsel could prepare to proceed with cross-examination and rebuttal. After the lunch break, Thorson's counsel once again moved for a continuance, claiming that he had spent much of the lunch break consulting with Thorson, and had not had adequate time to review the prosecutor's notes in order to prepare an adequate cross-examination and rebuttal. Again, the trial court denied Thorson's motion for a continuance.

¶26. It is well settled in this State that "the decision to grant or deny a continuance is one left to the sound discretion of the trial court." ***Johnson v. State***, 631 So.2d 185, 189 (Miss. 1994); ***Lester v. State***, 692 So.2d 755 (Miss. 1997); ***Jackson v. State***, 684 So.2d 1213, 1221 (Miss. 1996). We will not overturn this decision unless we find an abuse of that discretion. ***Id.*** In the case *sub judice* the trial judge did not abuse his discretion in refusing to grant Thorson's motion for a continuance.

## CONCLUSION

¶27. The State's peremptory strike of Patty Jackson based solely on her religious affiliation violates Article 3, § 18 of the Mississippi Constitution as well as Mississippi Code Annotated § 13-5-2 of the Mississippi Code of 1972, as amended. Thus, we reverse and remand for a new trial.

¶28. We find no merit in Thorson's other assignments of error.

¶29. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, SMITH AND WALLER, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**

---

1. ***State v. Alen,*** 616 So.2d 452 (Fla. 1993); ***People v. Snow***, 746 P.2d 452 (Cal. 1987); ***State v. Gilmore***, 511 A.2d 1150, 1159 n.3 (N.J. 1986); ***People v. Langston,*** 641 N.Y.S. 2d 513 (N.Y. Sup. Ct. 1996) (*holding that* ***Batson*** doctrine does not apply to peremptory challenges based on religious affiliation, but that the New York Constitution prohibited such challenges.); ***State v. Levinson***, 795

P.2d 845 (Haw. 1990); ***Commonwealth v. Soares***, 387 N.E. 2d 499 (Mass. 1979).

2. ***State v. Davis***, 504 N.W. 2d 767 (Minn. 1993), *cert. denied,* 511 U.S. 1115 (1994); ***Casarez v. State***, 913 S.W. 2d 468 (Tex. Crim. App. 1995); ***United States v. Clemmons,*** 892 F.2d 1153 (3rdCir. 1989); ***United States v. Blackman***, 66 F.3d 1572 (11th Cir. 1995); ***People v. Malone***, 570 N.E.2d 584 (Ill.App.Ct.), appeal denied, 584 N.E.2d 135 ( Ill. 1991).

3. ***United States v. Jimenez***, 77 F.3d 95 (5th Cir. 1996); ***James v. Commonwealth***, 442 S.E. 2d 396 (Va. 1994).

4. ***Fernandez v. State***, 639 So.2d 658 (Fla. Dist. Ct. App. 1994) (*holding that* in order to object to a peremptory challenge, one must show that the venire person challenged is a member of a distinct racial, ethnic, religious, or gender group and that there is a strong likelihood that the peremptory challenge is based upon membership in that distinct group.)

5. We are not faced with the question of whether a person can be struck based on economic status today, so we will not address this issue. However, we would like to note that economic status is not the equivalent of unemployment and that we will continue to permit peremptory challenges to be exercised against venire persons based on unemployment.

6. It should also be noted that Grissom cited membership in the Holiness Faith as a reason for striking Margaret Peters, but since Grissom gave other sufficient reasons for striking Peters, the fact that he also cited religion is harmless error.

7. ***Guilder v. State***, 794 S.W. 2d 765 (Tex.App. 1990); ***State v. Antwine***, 743 S.W.2d 51, 67 (Mo. 1987), *cert. denied,* 486 U.S. 1017(1988); ***People v. Mack***, 538 N.E.2d 1107 (Ill.1989); ***Foster v. State***, 374 S.E.2d 188, 192 (Ga. 1988).

8. ***United States v. Garrison***, 849 F.2d 103 (4th Cir. 1988); ***United States v. Roan Eagle***, 867 F.2d 436 (8th Cir. 1989); ***People v. Mack***, 538 N.E.2d 1107 (Ill. 1989); ***State v. Porter***, 391 S.E. 2d 144 (N.C. 1990); ***Powell v. State***, 372 S.E.2d 234 (Ga. Ct. App. 1988).