McMILLIN, C.J.,
for the Court:
¶ 1. Torris Gates has appealed his conviction for burglary on the sole ground that the trial court erred in permitting the State to exercise a number of its peremptory strikes to remove African American venire members as potential jurors when those strikes were being exercised for the sole purpose of affecting the racial makeup of the jury in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
¶ 2. During jury selection, the State exercised six peremptory challenges to venire members; four against African Americans and two against whites. The jury ultimately chosen consisted of seven white females, two African American females, two white males and two African American males. Defense counsel raised the issue of whether the four strikes to remove other African Americans were exercised solely on the basis of their race. Under Batson, the procedure calls for the party raising the issue of improperly motivated strikes to make a prima facie showing that the strikes were based on racial considerations. Batson, 476 U.S. at 96, 106 S.Ct. 1712. Only if the court is convinced that a prima facie case of discriminatory practice has been made should the court move to the next step, which is to require the party exercising those strikes to offer race-neutral reasons for the strikes. Batson, 476 U.S. at 97, 106 S.Ct. 1712. In this case, there was no finding by the court that the defense had made a prima facie case of discrimination. Instead, the court simply required the State to offer its reasons for the strikes. The State proceeded to do so, without objection at first, although after having offered its race-neutral reasons for one strike, the State somewhat belatedly raised the contention that a prima facie case of discrimination had not been made out. Despite that mild protest, the State did not press the point to the extent of obtaining a ruling from the court; rather, it continued to offer its race-neutral reasons for its strikes. Under the later decision of Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), these events had the effect of rendering moot the requirement of a prima facie showing of discrimination.
¶3. Thus, the focus necessarily turned to two considerations. Frist, the trial court was required to determine whether, in fact, the reasons offered for exercising the strikes were race-neutral on their face. Thorson v. State, 721 So.2d 590 (¶ 5) (Miss.1998) (citing Hernandez v. New York, 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). Secondarily, even if the trial court determined the reasons offered to be facially race-neutral, the court was required to explore further to determine whether those race-neutral reasons advanced by the State were, in fact, nothing but a pretext to mask the State’s true intent to systematically exclude African Americans from the jury based solely on their race. Thorson, 721 So.2d at (¶ 5).
¶ 4. The State’s reasons for striking the four African American jurors were as follows: the first juror was reported to have a criminal record for bootlegging activities, and the second juror was reported to be unemployed and to have a son who was engaged in bootlegging activities. Additionally, it was claimed that the second juror’s demeanor during voir dire indicated her unsuitability to serve on the jury. The third venire member was reported to have laughed aloud when another potential juror commented favorably about law enforcement officers. She was also reported to be a member of a family that had substantial difficulties with the law. The final challenged African American venire member was reported to be a relative of *119 the third challenged member and thus a member of the same family that was often in trouble with law enforcement officers. She was also said to have displayed an appearance that indicated she might be subject to narcotic abuse.
¶ 5. When offered an opportunity to respond to the reasons advanced by the State, defense counsel remarked: “some of the reasons given by the State, I think they’re pretextual.” The court considered each potential juror individually and found the reasons offered to strike them race-neutral. Though the court did not deal specifically with the question of pretext, in the course of considering the reasons offered, the court accepted the State’s representation as to the behavior of one of the jurors during voir dire even though the court indicated that it had not seen it. This is a clear indication that the trial court was of the opinion that the State, in offering its reasons, was proceeding in good faith and was not attempting to mask a hidden intention to discriminate behind arguably race-neutral reasons. Because of the subjective nature of such determinations, the trial court is afforded wide discretion in passing on whether the State is. proceeding in good faith. Thorson, 721 So.2d 590 at (¶ 4) (Miss.1998) (citing Hernandez, 500 U.S. at 367-68, 111 S.Ct. 1859); see also Harper v. State, 635 So.2d 864, 868 (Miss.1994). In view of the fact that the jury that ultimately tried the case had substantial African American representation and in view of the fact that the State actually used a full one-third of its strikes against non-minority venire members, we can discover no basis in this record to conclude that the trial court abused its discretion in determining that the State’s challenges were appropriately exercised.
¶ 6. In closing, we note that the State, as to two of the potential jurors, advanced, as a part of its reasoning, the fact that the jurors were unemployed. The trial court, in passing on those reasons it would accept as race-neutral, was silent as to the acceptability of such a reason. Employment status standing alone, if it is to be employed by the State as a legitimately race-neutral criterion to exclude potential jurors, must be rigorously applied across the entire venire, without regard to the economic status of the venire member. If it is not so applied, then any attempt to exercise that reason to exclude an African American who is, perhaps, on the lower end of the economic spectrum in terms of income, must be viewed with a high degree of skepticism as being a mere pretext. Nevertheless, in this case, because the trial court seemed to ignore these potentially-questionable reasons to exclude two African American venire members from the jury, we find it unnecessary to explore further whether the employment status of potential jurors was used evenhandedly by the State or was merely raised as a pretext to hide the true intention of excluding these two jurors based on their race. Because there were other race-neutral reasons advanced by the State and accepted by the trial court as genuine, and because we find no abuse of discretion in the trial court’s decision to allow the peremptory strikes of these potential jurors on the alternative grounds offered, we conclude that Gates’s conviction should be affirmed.
¶ 7. THE JUDGMENT OF THE CIRCUIT COURT OF CHICKASAW COUNTY OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVE YEARS WITH TEN YEARS SUSPENDED LEAVING FIFTEEN YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS; AND TO PAY $100 TO VICTIM’S COMPEN *120 SATION FUND, IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO CHICKASAW COUNTY.
KING AND SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.