ISHEE, J.,
for the Court.
¶ 1. After a trial, Larry Walker was convicted in the Lawrence County Circuit Court of carjacking, kidnapping, and attempted forcible sexual intercourse. For each count, Walker was sentenced to serve a term of life without eligibility for parole in the custody of the Mississippi Department of Corrections, with all sentences to run consecutively. Aggrieved by the judgment against him, Walker appealed. He now asserts three assignments of error. Finding error, we reverse and remand for a new trial in accordance with this ruling.
FACTS
¶2. On the night of August 25, 2001, sixteen-year-old B.D. was driving her father’s truck to visit her mother when she stopped at a convenience store in Monticello, Mississippi to get a bottle of water. As she was getting back into the truck, Walker approached her from behind and told her that he had a pistol. Walker ordered B.D. to get into the truck and she would not get hurt. B.D. got into the truck, slid over on the seat, and Walker got behind the wheel.
¶ 3. Walker drove away from the convenience store and headed south on Highway 27. After attempting several stops, Walker turned down Manning’s Crossing Road, stopped in a field, and turned off the truck’s headlights. He instructed B.D. to remove her clothing from the waist down and to lie down. After she did this, he attempted to have intercourse with her, but was unsuccessful. Walker told B.D. she would not get hurt if she cooperated, and that she had to perform oral sex on him. In the darkness, B.D. pretended to use her mouth, but used her hand instead. Walker ejaculated on her face and shirt.
¶ 4. On February 19, 2002, Walker was indicted by a Lawrence County grand jury for car jacking, kidnapping, attempted forcible intercourse, two counts of sexual battery, and robbery. Walker’s first trial began on January 14, 2004. The trial took place in Marion County by order by Walker for a change of venue. The jury found Walker not guilty for one count of sexual battery and robbery. The jury could not reach a verdict as to the other charges.
¶ 5. Walker’s second trial was also held in Marion County, on June 22, 2004. The jury found him guilty of carjacking, kidnapping, and attempted forcible intercourse. He was found not guilty of the remaining sexual battery charge. The trial court sentenced Walker as a habitual offender to a term of life imprisonment on each of the three counts, with the sentences to run consecutively and with no eligibility for parole. Aggrieved by the judgment against him, Walker now appeals. He asserts the following assignments of error: (1) the trial court erred in overruling Walker’s Batson objection against the State for exercising peremptory challenges in a racially discriminating manner; (2) the trial court erred in overruling Walker’s objection and not declaring a mistrial concerning B.D.’s testimony; and (3) the verdict of guilty was against the overwhelming weight of the evidence.
ISSUES AND ANALYSIS
I. Whether the trial court erred in overruling Walker’s Batson objection against the State for exercising peremptory challenges in a racially discriminating manner.
¶ 6. Walker, who is an African American, first contends that the State *957 violated Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) when it used peremptory challenges to methodically purge the jury panel of all but one African American. Walker asserts that most of the race-neutral reasons given to the trial court were extremely weak and pretextual in nature. Specifically, Walker points to the exclusion of Julius Johnson from the jury. Johnson was initially accepted as a juror because the court determined that the race-neutral reasons provided by the State were not sufficient. However, after the addition of another African American to the jury Johnson was removed. The State contends that Johnson was removed because the prosecution provided a race-neutral reason, namely, that Johnson was inattentive during voir dire by the prosecution.
¶ 7. The appropriate standard of review for a trial court’s findings under Batson is well established. The conclusion that a striking party engaged in discrimination is largely a factual finding by the trial court. Manning v. State, 765 So.2d 516, 519(¶ 8) (Miss.2000) (citing Thorson v. State, 721 So.2d 590, 593(¶ 4) (Miss.1998)). Consequently, we must give great deference to the trial court’s findings of whether or not a peremptory challenge was race-neutral. Id. (citing Id.). We will not overrule a trial court’s ruling on a Batson issue absent indication in the record that the ruling was clearly erroneous or against the overwhelming weight of the evidence. Id. (citing Thorson, 721 So.2d at 593(¶ 4)).
¶ 8. In the instant case, the State used peremptory challenges on five jurors, all of whom were African American. Lenna Farr was excused after the State argued that her unemployment was a race-neutral reason. The trial court then excused William Jefferson, accepting the reasoning that he was a victim of a crime and had dealings with the district attorney’s office. Nakisah Varnado was excused next because she was on non-adjudication. The trial court also excused Latonia Peters, on the grounds that she was possibly illiterate and that she listed the same address as that of someone the State prosecuted for capital murder.
¶ 9. We now turn to the circumstances surrounding the dismissal of juror Johnson, who was the fifth African American the State sought to strike using a peremptory challenge. The record reflects the following:
BY MR. KITTRELL: Your Honor, on Johnson Lane, law enforcement informed us that they have had the S.O.— or law enforcement has informed us that they’ve had a little difficulties in that area, and also that he — I watched Mr. Johnson during the voir dire, and he was asleep more than he was awake except, of course, when the daughter issue came up, and he answered specifically to Mr. Jones about the daughter. So we would — we would assert that both his location of where he lives, as well as also just the inattention that was shown by him during the course of the voir dire.
BY THE COURT: All right, that will not be a sufficient reason. He’ll be on there. All right, he’s Number 21. (JURY SELECTION CONTINUED-OFF THE RECORD). All right, we have Victoria Hall as a juror, and I would say that the reasons given for Julius Johnson would be—
BY MR. JONES: Judge — well—
BY MY. HAYS: Your Honor—
BY THE COURT: My whole purpose on Johnson was just to be sure that— cause normally—
BY MR. JONES: What is the reason, the race neutral reason to strike ... Victoria Hall? They can’t just strike her without a race neutral reason.
*958 BY THE COURT: They’re keeping her, and because they’re keeping her, I’m going to let them strike Julius Johnson, who they wanted to strike to begin .with.
¶ 10. The State is correct that juror inattentiveness has been accepted as a valid race-neutral reason. Stevens v. State, 806 So.2d 1031, 1047-48 (¶¶ 68-71) (Miss.2001). The case at bar is distinguishable from Stevens, however. In Stevens, the State presented the following race-neutral reasons to strike the juror in question: (1) she failed to complete a juror questionnaire; (2) she did not follow court directions; and (3) she appeared inattentive and preoccupied the entire time. Id. at 1047(¶ 68). Before making a determination of whether the reason provided was race-neutral, the court in Stevens inquired if the State was going to accept the next African American juror. Id. at (¶ 69). The State responded that it planned to accept the next juror who was black. On that understanding, the trial court allowed the juror to be struck. Id.
¶ 11. In the instant case, the trial court initially included Johnson on the jury, as it found on the record that the reasons provided by the State were not race-neutral. The court decided to allow the State to strike Johnson only after another African American was added to the jury. If the trial court initially found the State’s reasons to be insufficiently race-neutral, we fail to see how the addition of another African American juror could alter this conclusion. We find that the trial court’s Batson findings as to juror Johnson were clearly erroneous. Accordingly, we reverse and remand for a new trial consistent with this holding. As we reversing and remanding on the first issue, we decline to address the remaining issues.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF LAWRENCE COUNTY IS REVERSED AND REMANDED FOR A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAWRENCE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, AND BARNES, JJ„ CONCUR. SOUTHWICK AND ROBERTS, JJ., NOT PARTICIPATING.