SOUTHWICK, J.,
for the Court.
¶ 1. Marcus Chandler was convicted of murder by a Hinds County Circuit Court jury and sentenced to life in prison. On appeal he claims that the evidence was insufficient to sustain his conviction, that there were errors regarding jury instructions, and that his counsel was ineffective. We disagree with these assertions and affirm his conviction and sentence.
FACTS
¶ 2. There was testimony at trial to establish the following facts. On August 3, 2001, in Jackson, Mississippi, Marcus Chandler and Anthony Johnson rode together in Johnson’s car to get them hair cut in the late afternoon. Chandler then borrowed Johnson’s car to take his infant daughter back home. When Chandler returned the vehicle, Johnson accused him of having stolen drugs from it. Johnson had just let Chandler out at Chandler’s house when the argument escalated into a fight. The two men had known each other for years and lived close to each other on the same street. After the fight, Johnson drove his car down the street to where he lived at his aunt’s house. The houses were close enough that a neighbor who lived across from Chandler’s residence could see Johnson enter and exit his house. Johnson called somebody on his cellular phone and then left his house. He drove to pick up his cousin and another friend, then returned to his house.
¶ 3. As Johnson returned to his house, Chandler confronted him with the words “what are you looking at?” Johnson shook his head, briefly went into his house, and then drove down the street with his cousin and a friend. The three men went to a nearby convenience store, the Chuk Stop, located on the corner of Northside Drive and Newman Street. After Johnson left for the store, Chandler obtained an assault rifle from the trunk of his own car. Armed with the rifle, Chandler drove towards the Chuk Stop. There was evidence that Johnson had gotten out of his vehicle at the store, talked to someone, then got back in. Chandler parked behind and blocked Johnson’s car. Chandler exited and fired sixteen rounds through the rear of Johnson’s vehicle, killing Johnson who was in the driver’s seat. Chandler claimed that the weapon he used was a handgun but it was established that the weapon was an assault rifle that fired the same rounds as an M-16.
¶ 4. Chandler was indicted for murder, convicted, and sentenced to life imprisonment.
DISCUSSION

1. Weight and sufficiency of the evidence

¶ 5. Chandler argues the evidence presented at trial was insufficient to convict him and that the conviction was against the overwhelming weight of the evidence. He therefore argues that the trial court erroneously denied his motion for a directed verdict, his request that the case be given to the jury only on the issue of manslaughter, and his motion for a peremptory instruction.
*50 ¶ 6. Chandler in part supports his claim on a statement by the prosecution that suggested Johnson was the aggressor. The prosecution stated that, “Self-defense only comes into bear, and only the character of the victim ... comes in to bear if, in fact, it’s shown that [the victim] is the first aggressor. And at this point that probably is going to be the case.” This statement was in connection with an argument that the testimony about the victim Johnson’s past involvement with drugs should not be allowed. Chandler concludes that the jury could only consider the lesser offense of manslaughter because the prosecution established that Johnson was the aggressor in the earlier fistfight between Johnson and Chandler. Though Johnson may have been the aggressor during the fistfight, more is required prior to use of deadly force in self-defense. Whatever-the State may have meant at that point in the trial, we will discuss the evidence available at the end of the trial.
¶ 7. There was testimony that the fight between Johnson and Chandler was a serious one, and that Johnson had hit Chandler over the head with a handgun. There was other evidence that Johnson was in the illegal drug trade, and that he was a violent man. Chandler testified that he was in fear of his life when he killed Johnson. Chandler knew Johnson carried a pistol and had earlier that day beaten Chandler. Chandler testified that just before shooting Johnson, he saw his adversary reaching for a gun under the seat.
¶ 8. There was other evidence for the jury. Prior to Johnson’s leaving Chandler’s house but after the fight between the two, Chandler stated to Johnson, “you’re a dead man, that’s on my baby.” A police officer whom Chandler knew testified that Chandler telephoned him after the shooting, and told him that he had gotten his weapon in order to shoot Johnson because he wanted the problems “to be over with. It didn’t bother him anymore. He wanted to let it just fade.” Other testimony contradicted that Johnson displayed any weapon at the Chuk Stop. A witness at the convenience store testified that Johnson did nothing to provoke Chandler. There was contradictory testimony concerning whether Johnson had a firearm in his car at the time of the shooting. A witness to the shooting testified that he had previously seen Johnson with a gun on his lap in the car, and that the passenger in Johnson’s car retrieved the gun from the car after the shooting. Investigators did not recover a weapon from Johnson’s car. Chandler’s vehicle was positioned to block Johnson’s car. Chandler exited and shot sixteen rounds into Johnson’s vehicle. Five rounds penetrated the rear window and struck Johnson through his back as he sat in the driver’s seat.
¶ 9. Permissible inferences from the evidence presented at trial include that Chandler armed himself, drove to the store, and intentionally killed Johnson without justification. Whatever occurred earlier, that fight was over and the jury could find that Chandler was in no imminent danger from Johnson. Johnson’s back was to Chandler when he was killed. There was an ample supply of evidence that Chandler had no basis to believe he was acting in necessary self-defense.
¶ 10. Chandler also alleges error in not having been granted a new trial. We review a challenge to the weight of the evidence by a motion for a new trial by examining all the evidence in a light most favorable to the verdict. Bush v. State, 895 So.2d 836, 843 (Miss.2005). We will order a new trial only if the verdict was “an unconscionable injustice.” Id. Based on the evidence that we have already summarized, there was no such injustice.

*51
2. Prosecutorial Misconduct

¶ 11. The parties agreed to a limiting instruction that was given prior to Chandler’s being cross-examined. That instruction stated:
The evidence of prior arrests was admitted by the Court solely for the purpose of offering rebuttal to the defendant’s testimony concerning the defendant’s prior testimony of seeking revenge on others. The jury is instructed that it is not to regard this evidence as evidence of the defendant’s guilt of the offense for which he is on trial.
¶ 12. On direct, Chandler stated that he did not believe in retaliation for wrongs that had been done to him. The prosecution questioned him about three prior arrests to impeach his testimony. As to two of those incidents, there was no objection to the prosecutor’s questions. Consequently, those issues are waived for appellate review. Williams v. State, 445 So.2d 798, 810 (Miss.1984) (waiver except for arguments that are the “most extreme and [an] intolerable abuse of [the prosecutor’s] privilege.”) We examine only the final example.
¶ 13. The following exchange took place:
PROSECUTOR: And then he wants to tell us that the fact that he has been charged with assault three previous times doesn’t matter. No, it doesn’t matter as the facts of this case. But it does show that where there is smoke there’s usually fire, ladies and gentlemen.
DEFENSE COUNSEL: Your Honor, I object to that argument and I move for a mistrial. This Court clearly instructed the jury that that had nothing to do and they could not consider that as guilt or innocence of my client.
PROSECUTOR: And I just said that on closing. I said that has nothing to do with what he did.
BY THE COURT: All right. I think he did state that. Overruled, both the objection and the motion.
PROSECUTOR: Thank you. It shows that three other people have reason to believe that he assaulted them. One of those people was his ex-girlfriend, a pregnant girl, pregnant with his baby.
¶ 14. The prosecutor then briefly referred to allegations that Chandler had beaten a man at the Chuk Stop where he later shot Johnson and about an altercation Chandler had with a pregnant woman. The prosecutor concluded by stating, “I didn’t bring it up on closing, he brought ⅛ up.” In its closing, the defense had previously made the following statements:
Marcus Chandler was on the witness stand, and the prosecutor asked him about some allegations that somebody made against him to make you think that he’s not worthy of belief. But he hasn’t been convicted of those things. He denied those things. And he has never been to court. And no judge or no jury has ever said that he was guilty of either one of them. In fact, he hasn’t even been prosecuted for them. But the prosecutor asked, weren’t you charged with this. Didn’t somebody say you did this[?]
¶ 15. The defense went on to say that “people are picked up and arrested and charged all the time on ridiculous false allegations.” At the end of closing arguments the defense renewed the motion for new trial based on the arguments by the prosecution. The court denied the motion.
¶ 16. The State asserts that this final argument was consistent with the limiting instruction given by the court. That is incorrect. The only reasonable meaning of “where there is smoke there’s usually fire, *52 ladies and gentlemen,” is that since Chandler had committed these acts before he likely did so again. The disingenuous statement immediately before the smoke and fire that “it doesn’t matter as [to] the facts of this case,” does not cancel the natural effect of the argument.
¶ 17. The State also argues that any conceivable harm from the prosecutors’ remark was cured by the court’s having previously instructed the jury that arguments of counsel are not evidence and should be disregarded when jurors find them inconsistent with the testimony. The Supreme Court has held that the closing argument by the prosecution will cause reversal only if the “natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced” by that prejudice. Flora v. State, 925 So.2d 797, 812 (Miss.2006). The objective of controlling prejudicial statements is to keep jurors’ focus on the evidence.
¶ 18. Images of Chandler’s beating a pregnant woman could invoke prejudice. However, the shocking nature of the crime for which Chandler was being prosecuted likely produced worse mental images. A man sitting in his car who is shot from behind multiple times with a military-grade assault rifle at a public place in the community invokes extremely shocking emotions. The brief mention of allegations that Chandler beat a pregnant woman, in context, did not likely create harmful, outcome-changing prejudice.
¶ 19. We find no reversible error in the argument.

3. Peremptory challenges to prospective jurors

¶ 20. During jury selection, Chandler’s attorney argued that the State had been using its challenges in an unconstitutional manner in order to remove most of the black members of the panel. The trial judge determined that no prima facie case for discriminatory use of the challenges was shown. Consequently, the State never had to justify its individual challenges.
¶ 21. The prosecution used eleven challenges to strike nine black and two white jurors. The prosecution accepted five black panel members. The defense then struck one of those five, leaving four black members on the jury. The prosecutor complained that the defense struck eleven whites and only one black member of the venire. After all the challenges, there were eight white and four black members of the jury. The court ruled that a prima facie case had not been established against either attorney and so race-neutral justifications did not have to be given.
¶ 22. The basis for this dispute is the decision by the United States Supreme Court regarding the need for non-discriminatory use of peremptory challenges. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The procedure for evaluating these challenges has been adjusted through the years since Bat-son. A quite recent decision gives us the current terms of the required analysis of a challenge for a racially-motivated peremptory strike of a juror. Rice v. Collins, 546 U.S. 333, 338-41, 126 S.Ct. 969, 973-75, 163 L.Ed.2d 824 (2006). It reiterated the Batson demand that the trial court “determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race.” Id. at 973-74. A useful explanation of the proof needed for a pri-ma facie showing was made by United States Circuit Judge E. Grady Jolly:
To establish a prima facie case, a party is required to show that the circumstances surrounding the peremptory challenges raise an inference of purpose *53 ful discrimination. The trial court should consider all relevant circumstances in determining whether a prima facie Batson violation can be established. Factors that give rise to an inference of discrimination include, among others, a pattern of strikes against jurors of a certain race and the party’s statements and questions during voir dire. “A pri-ma facie case of racial discrimination requires a defendant to ‘come forward with facts, not just numbers alone.’ ” In this circuit, a trial court’s determination that a party has failed to make a prima facie showing is accorded a “presumption of correctness, which can only be rebutted by ‘clear and convincing evidence.’ ”
Brown v. Kinney Shoe Corp., 237 F.3d 556, 561 (5th Cir.2001) (citations omitted).
1123. The thrust of Chandler’s argument is that the “pattern” of the State’s striking such a disproportionate number of one race compared to another made the piima facie case. We note, though, that it is for the trial judge to analyze whether an inference of discrimination exists. Great deference is given “to a trial court’s determinations under Batson because they are based largely on credibility.” Flowers v. State, 947 So.2d 917 (Miss.2007). The court went on to say that a trial court will only be overruled on a Batson ruling where “the record indicates that the ruling was clearly erroneous or against the overwhelming weight of the evidence.” Id. (quoting Thorson v. State, 721 So.2d 590, 593 (Miss.1998)). Though the Floiuers case concerns an evaluation of the allegedly nondiscriminatory reasons offered by counsel, the deference would apply to all fact-finding on this issue.
¶ 24. We suspect that the trial judge was relying on the fact that the State accepted a significant number of minority members for the panel and did not seek to strike them all. A pattern of discriminatory strikes is a basis for finding a prima facie showing of discrimination, but the pattern the trial judge observed was not sufficiently clear. The State accepted about an equal number of blacks as whites, but struck a much larger percentage of blacks than whites. As the ruling of the trial court receives great deference, we conclude that the pattern of possible discrimination was sufficiently broken so that the ruling was not clearly erroneous.
A Ineffective Assistance of Counsel
¶ 25. Chandler represents himself on appeal. He alleges that his trial counsel was constitutionally ineffective by failing to offer a jury instruction defining reasonable doubt and by failing to object and raise in the motion for new trial the failure of the trial court to allow a certain witness to testify.
¶ 26. Counsel is constitutionally ineffective if his performance was deficient and this deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is proven by showing that there is a “reasonable probability” that without counsel’s deficiency the trial would have had a different outcome; the probability requires examining all the circumstances of trial. Nicolaou v. State, 612 So.2d 1080, 1086 (Miss.1992). The burden of proof is on Chandler. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990).
¶ 27. As to an instruction on reasonable doubt for jurors, the Mississippi practice has apparently unvaryingly been to refuse such an instruction. Martin v. State, 854 So.2d 1004, 1009 (Miss.2003); Boutwell v. State, 165 Miss. 16, 30, 143 So. 479, 483 (1932). Chandler’s counsel was not ineffective for not submitting an improper jury instruction. Chandler’s counsel did what *54 he could on this point by explaining reasonable doubt in closing arguments.
¶ 28. The other basis for complaint concerns Rebecca King as a possible witness. On the last day evidence was presented to the jury, the prosecution moved that the court exclude Rebecca King as a witness. King’s anticipated testimony was that she saw Johnson with a gun during the fight he had with Chandler earlier in the day of the homicide.
¶ 29. The prosecution had not been given any information about King during discovery. Defense counsel stated that members of Chandler’s family had a phone number they repeatedly used when attempting to contact King. Defense counsel did not receive a phone call from King until the night before King would testify. There was no indication that King was in the courtroom on the morning she might have testified. Thus Chandler has not shown the excluded witness was available. The prosecution argued that a discovery rule violation had taken place and that King’s testifying without the State’s having an adequate opportunity to interview her would be prejudicial to its case.
■ ¶30. The court excluded King as a witness because King was a material witness that was going to testify about a key issue — whether Johnson displayed and struck Chandler with a gun. The court found that a discovery violation had occurred because Chandler did not disclose the means he had available to contact King. The court concluded that allowing King to testify would be prejudicial to the prosecution because of the failure of Chandler to respond to discovery.
¶ 31. We do not address whether the trial court properly handled this alleged discovery violation. Chandler does not make the propriety of the exclusion an independent issue. Moreover, we find no prejudice to Chandler. Though King might have had evidence useful to Chandler, her testimony as described on appeal would have been cumulative to other evidence. Both Chandler and his younger brothei’, Ryan, who was sixteen at the time of trial, testified that Johnson had a gun and struck Chandler with it during the fight. Even with more evidence of Johnson’s supposed weapon during the earlier fight, the evidence that had to be overcome was that later in the day, Chandler armed himself, drove to Johnson’s location, and shot him.
¶ 32. Chandler has failed to demonstrate that counsel was deficient and that there is a reasonable probability that without the deficiency, the trial would have had a different outcome.

5. Cumulative, Error

¶ 33. Chandler argues that even if the previously discussed claims do not constitute error, their cumulative effect deprived him of his constitutional right to a fair trial. This is a standard argument on appeal, and often is made when, as here, there are few if any discovered errors to accumulate. The Supreme Court has sought to describe how cumulative error analysis is to be conducted:
upon appellate review of cases in which we find harmless error or any error which is not specifically found to be reversible in and of itself, we still have the discretion to determine,, on a ease by case basis, as to whether such error or errors, although; not reversible when standing alone, may when considered cumulatively require reversal because of the resulting cumulative effect.
Byrom v. State, 863 So.2d 836, 847 (Miss.2003) (emphasis added).
¶ 34. We find almost no error presented to us. The one exception is that we have concluded that the prosecutor made *55 an improper argument, but also found that no prejudice resulted. There is no other perceived error that occurred, and therefore no cumulative effect.
¶ 35. We affirm Chandler’s judgment of-conviction and his life sentence.
¶ 36. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE .CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY.